SEARS, ROEBUCK & CO., Plaintiff,

v.

AMERICAN PLUMBING & SUPPLY CO., Defendant.

Civ. A. No. 5959.

United States District Court
E. D. Wisconsin.

Aug. 1, 1956.

Hess & Chernov, Milwaukee, Wis., Benedict S. Deinard and Leonard, Street & Deinard, Minneapolis, Minn., of counsel, for plaintiff.

Morris Karon, Milwaukee, Wis., Meyer S. Cohen, Green Bay, Wis., for defendant.

GRUBB, District Judge.

This case is before the Court on plaintiff's motion for summary judgment. The plaintiff, Sears, Roebuck & Co., brought this action to recover secret commissions allegedly paid by Marcus Kohlenberg, as president of the defendant, to one Stockwell, a purchasing agent of the plaintiff. Plaintiff alleges that it employed Stockwell as a field representative to procure plumbing and heating supplies for resale in plaintiff's retail outlets. It is further alleged that during 1947 defendant agreed to pay said Stockwell a commission at the rate of 5% or 10% on all sales by defendant to plaintiff procured by Stockwell, and that pursuant to said agreement $26,244.04 was paid to Stockwell by the defendant. Plaintiff claims that defendant is liable to it for that amount, both as a joint tort-feasor and as a constructive trustee.

The complaint contains four other counts, but the plaintiff has informed the Court that it will press only the first count as set forth above.

After the defendant had filed its answer, the plaintiff moved for a summary judgment based upon all the affidavits, depositions and pleadings on file. The defendant then brought five motions on its own behalf among which was a motion for withdrawal of its answer and for substitution of an amended answer. The Court feels that the defendant's motions will have a direct bearing upon whether or not summary judgment would be granted, and for that reason, will decide defendant's motions first.

·1. *Defendant's Motion for Withdrawal of Its Answer and for Substitution of an Amended Answer.*

The Federal rules relating to the amendment of pleadings are very liberal in their application. The fact that defendant seeks to amend its answer after plaintiff filed its motion for summary judgment is no reason for denying the amendment. 6 Moore, Federal Practice, § 56.10; Rossiter v. Vogel, 2 Cir., 1943, 134 F.2d 908; McLain v. Jarecki, D.C. Ill.1952, 107 F.Supp. 148.

Rule 15(a), F.R.C.P., 28 U.S. C.A., which governs the granting of amendments to pleadings has been considered at some length by Moore. The following quotations from Moore, Federal Practice, serve to illustrate the attitude of the courts regarding amendments to pleadings:

15.08

" * * * the courts have not been hesitant to allow amendments for the purpose of presenting the real issues of the case, where the party has not been guilty of bad faith, is not acting for purposes of

delay, the opposing party will not be unduly prejudiced or the trial of the issues unduly delayed."

"Nevertheless the courts are required to allow amendments freely, and refusal should be placed on some valid ground, as that the party has had a sufficient opportunity to state a claim and has failed, or that the amendment is not offered in good faith, or will result in prejudice."

Defendant's motion to amend its answer is hereby granted, except as to the addendum to the amended answer which the Court views as meritless.

*2. Defendant's Motion to Bar Plaintiff from Maintaining This Action.*

■■ This motion embraces two defenses, estoppel and abatement. The issue of estoppel will be discussed later in this opinion. As to the abatement of this action, defendant claims that the pendency of an action by Sears, Roebuck & Co. against Stockwell in a Federal District Court in Minnesota should abate the action in this district. There is no reason why this action should abate. Nichols, § 27.39, in his work on federal procedure, states that in order for there to be an abatement, suits must be pending between the same parties, and that a second suit will not abate where parties are not identical or in privity with those in the prior suit. That is the general rule. The parties are not the same in the actions in question. Furthermore, the defendant has specifically denied any privity with Stockwell. The motion as far as it relates to abatement is denied.

*3. Defendant's Motion to Enjoin Plaintiff from Using the Deposition of Marcus Kohlenberg Taken in the Action of Sears, Roebuck & Co. v. Louis Stockwell and to Strike and Suppress Said Deposition.*

■ This motion has now become moot. In the hearing had on these motions, plaintiff stated that it would not attempt to use Kohlenberg's deposition taken in the Stockwell action except as to the portions incorporated by stipulation in a deposition given by Kohlenberg in this case on June 22, 1954. Defendant's motion is denied.

*4. Defendant's Motion to Strike All References from Kohlenberg's Deposition in the Stockwell Action Contained in Plaintiff's Brief.*

Defendant's motion is granted except as to those portions of the deposition which were stipulated into Kohlenberg's deposition of June 22, 1954.

*5. Defendant's Motion to Strike and Suppress Plaintiff's Request for Admissions and Interrogatories of Plaintiff to Defendant, Dated January 22, 1954.*

Defendant's motion is hereby denied.

*6. Plaintiff's Motion for Summary Judgment.*

When the plaintiff filed its motion for summary judgment this case was not particularly complicated. Shortly after plaintiff brought its motion, defendant sought to amend its answer, and also raised a myriad of defenses. The Court is of the opinion that many of the defenses urged by the defendant were raised in an effort to cloud the issues in this case and, by means of a shotgun approach, to find some ground to defeat plaintiff's motion. Despite the length of the record in its present state, the Court believes that this is a proper case for consideration under Rule 56.

An excellent general discussion of the problem facing a judge who is to rule on a motion for summary judgment is contained in Pen-Ken. Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 1943, 137 F.2d 871, 877:

"Subparagraph (c) of the Rule [56] provides that the summary judgment 'shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.' The rule does not provide any method for exactly determining the presence of an issue of fact, and so each case depends upon the facts peculiar to it. Speaking in general terms, the court is not authorized under the rule to try issues of fact but it has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried."

In Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, 472, the court stated:

" * * * the history of the development of this procedure [Rule 56] shows that it is intended to permit 'a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried.' * * * Hence we have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment."

█ In its original answer, defendant admitted paying commissions to Stockwell. After the motion for summary judgment was filed, defendant amended its answer and therein denied paying commissions to Stockwell. Kohlenberg, in an affidavit dated February 9, 1954, which was submitted in opposition to plaintiff's motion, stated that the payments to Stockwell were not commissions but rather were gifts:

"10. In his talking with me before taking my deposition, said Siegel (attorney for Sears) used the word 'commissions' and I mistakenly accepted the term. I have been lately advised that the payments plaintiff claims Stockwell received from defendant were not commissions, for

Stockwell rendered no services of any kind to the defendant American Plumbing or to me. When said Siegel questioned me when he took my deposition, I did not understand some of his questions and Siegel at times put words in my mouth by his questions * * *."

Kohlenberg later stated in the deposition of June 22, 1954, page 39, that his attorney, Mr. Cohen, was the one who informed him that the payments were not commissions. The quoted portion of Kohlenberg's affidavit is not competent to raise an issue of fact as to the nature of the payments. The quoted portion pertains to a question of law in that Mr. Cohen's opinion was that the payments were not in legal effect commissions.

"All affidavits are required by Rule 56(e) to be made upon personal knowledge, setting forth facts which would be admissible in evidence and showing affirmatively that affiant is competent to testify to the matters stated. So, an affidavit is not within this mandatory requirement where based on information and belief or on hearsay." Nichols, Cyc.Fed. Proc. § 35.21.

Nor are ultimate facts and conclusions of law proper matter in an affidavit. 6 Moore, Federal Practice, 2328. Nevertheless, the contention that the payments were gifts will be gone into later.

█ The defendant alleges in many of its arguments and defenses that it should be allowed to plead the privilege of self-incrimination. The defendant claims that it fears its testimony will incriminate it under section 348.486 of the Wisconsin Statutes. That section of the statutes subjects a violator thereof to not more than five hundred dollars fine or imprisonment for not more than one year. Section 325.15 of the Wisconsin Statutes provides that no person shall be excused from testifying before any court *in a prosecution* under section 348.486 on the ground that the testimony required may tend to incriminate him.

The section goes on to give immunity to one who testifies in such a prosecution. Clearly, section 325.15 granting immunity to one testifying regarding matters touching on section 348.486 has no application to this civil action since this is not a *prosecution* under section 348.486.

 The defendant is a corporation. As a corporation, it has no privilege against self-incrimination; nor may a corporation refuse to produce its books and papers because they would incriminate its officers. 58 Am.Jur., Witnesses, § 49; Wigmore on Evidence, 3rd Ed., § 2259a. The defendant's claims that it will incriminate itself are legally insufficient.

 While it is true that the corporation itself has no privilege against self-incrimination, Kohlenberg, president of the defendant, does have a right to refuse to testify to corporate actions which might incriminate him personally, unless he waives such right. The question of Kohlenberg's privilege is especially important, as far as the motion for summary judgment is concerned, in relation to the deposition taken on June 22, 1954.

In a prior deposition taken on April 19, 1954, Kohlenberg refused to answer many questions regarding dealings with Stockwell and conversations had with Attorney Siegel who was retained by the plaintiff. Thereafter, plaintiff brought a motion to compel Kohlenberg to answer certain lines of questioning pursued by Siegel. On June 2, 1954, Chief Judge Tehan handed down an opinion. 19 F.R.D. 329. In that opinion, the Chief Judge specifically ruled that Kohlenberg had to answer all questions relating to promises allegedly made by Attorney Siegel and conversations bearing on defendant's claim of estoppel. In an order signed June 17, 1954, the Chief Judge ordered that the deponent Kohlenberg answer certain questions asked at the deposition of April 19, that Kohlenberg answer any questions as to sales by the defendant to the plaintiff, negotiations, conversations, dealings, transactions or relations between defendant or Kohlenberg, on the one side, and the plaintiff or any of its officers or employees (including Stockwell) on the other, that Kohlenberg answer questions relating to any payments, commissions or bribes paid by defendant to Stockwell, etc.

 When a further deposition was taken in compliance with Chief Judge Tehan's opinion on June 22, 1954, Kohlenberg waived his privilege against self-incrimination as to any matters therein which might have exceeded the scope of the Chief Judge's order. For that reason this Court believes that the entire deposition of June 22, 1954 may be considered by the Court in reaching a determination in this matter.

Shortly after the deposition of June 22, 1954 had begun, Mr. Karon, *attorney for the defendant*, objected to a question put by the plaintiff stating:

"I'll raise the objection of privilege and I want to preserve that objection on the record. The witness' privilege against self-incrimination, jeopardy and all the objections I raised before so as to save this man's rights and the rights of the defendants. May it be understood that this objection will go to all questions relating to Stockwell obtaining money from him or the defendant, American Plumbing and Supply Company." (Page 8)

Kohlenberg never personally asserted his privilege; he answered all questions put to him without protest.

 The Court has been unable to find any decision defining the right of a witness to refuse to testify in a diversity suit on grounds that he will be incriminated under a state law. Nor need the Court decide whether the state or the federal guarantee against self-incrimination is governing since, under both the federal and state decisions, Kohlenberg has waived his right to the privilege by failing to assert it personally. Here,

the objection on the grounds of privilege was asserted by Mr. Karon who was not even the attorney for Kohlenberg. And even had Mr. Karon been Kohlenberg's attorney, such an objection would have been futile unless Kohlenberg himself asserted the privilege.

The Federal law is well stated in Rogers v. U. S., 1951, 340 U.S. 367, 71 S.Ct. 438, 440, 95 L.Ed. 344:

"If petitioner desired the protection of the privilege against self-incrimination, she was required to claim it. * * * Furthermore, the decisions of this Court are explicit in holding that the privilege against self-incrimination 'is solely for the benefit of the witness,' and 'is purely a personal privilege of the witness'."

Ziegler v. U. S., 9 Cir., 1949, 174 F.2d 439, 447, involved substantially the same situation as that before the Court:

"It is true that appellant's counsel objected to the production of the checks, but that objection cannot be regarded as a claim of appellant's privilege against self-incrimination, for appellant's privilege was personal to him and could not be claimed by some one else for him, not even by his counsel."

See also, Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Nichols, Cyc.Fed.Proc., § 26.86, § 26.87.

Wisconsin decisions are in substantial agreement with the Federal cases, supra. In State ex rel. Kennon v. Hanley, 1946, 249 Wis. 399, 24 N.W.2d 683, 684, the Court stated:

"The privilege is that of the witness; the objection must be taken by him on his oath after the question has been asked; and it cannot be raised by a party to the suit or by an attorney."

See also, State v. Lloyd, 1913, 152 Wis. 24, 139 N.W. 514.

It is the decision of this Court that there is no genuine issue in this case concerning the following facts: That Stockwell was a purchasing agent for plaintiff;[1] that his capacity was known to defendant and defendant's president, Kohlenberg;[2] that Stockwell demanded a commission from Kohlenberg based on a percentage of defendant's sales to Sears;[3] that defendant did pay a percentage of its gross profit from sales to Sears to Stockwell;[4] that Kohlenberg

1. Uncontradicted affidavits of Charles W. Bach and Wade Hampton.

2. Kohlenberg deposition of March 12, 1953, page 33; Kohlenberg deposition of June 22, 1954, page 2.

3. Kohlenberg deposition of June 22, 1954, page 8:
"A. Well, he came in one day and told me that he was entitled to a commission for the sale that he was buying from us. So I asked him what he had in mind, so he told me he thought he should get 5% commission."
Page 11:
"Q. What I want to know is on this next occasion what you said with reference to the 5%. On the previous occasion you tell us you said you would let him know. A. Yes, so he came in then.
"Q. And then what did you say? A. He demanded 5% and I gave it to him."

On page 14, Kohlenberg said that on several occasions Stockwell demanded 10% of certain sales and that on certain occasions Kohlenberg paid Stockwell 10%.
"Q. You actually didn't want to pay him any more than you had to, did you? A. No."
Page 15:
"Q. So you mean you felt he could demand either five or ten per cent as he wished? A. No, he demanded five and I gave him five, and on one or two occasions he demanded ten and I gave him the ten."

4. Kohlenberg deposition of June 22, 1954, page 12:
"Q. From the time that he first asked for money, you remitted to him a commission on every sale that you made to Sears through orders procured by Stockwell, isn't that right? A. That's right."
Page 14:

and defendant never informed Sears of the payments to Stockwell;[5] that defendant paid Stockwell $26,244.04 based on a percentage of defendant's sales to the plaintiff.[6]

The defendant makes the claim that the payments made to Stockwell were gifts. This claim is at best extremely weak when viewed in the light of the admissions made by Kohlenberg.[7] Indeed, it is evident that defendant did not view the payments as gifts since it charged the payments off as business expenses on its income tax returns.[8]

 Whether defendant's payments to Stockwell are denominated as commissions, gifts or rebates is immaterial. What is important is that defendant aided Stockwell in a gross violation of Stockwell's duty of loyalty to the plaintiff. No exactly similar case has been found by the Court, or cited by either party, in the state of Wisconsin. The decisions which were found in Wisconsin

"Q. But on purchase orders that came from any Sears store or warehouse outside the Green Bay area you accounted to Stockwell for either 5% or 10%
"(Objection by Mr. Karon.)
"Q. I'll change it to: Remitted to Stockwell for either five or ten per cent. A. Yes, I remitted."
Page 16:
"Q. Now, whether it was ten per cent, or five per cent, you did pay him on all orders that came from the territory outside of Green Bay, is that correct? A. That's correct."

5. Kohlenberg deposition of March 12, 1953, page 33:
"Q. You knew he was acting as a buyer for Sears? A. Yes.
"Q. He indicated to you he did not want to disclose this commission arrangement to his superiors? A. Naturally."
Page 34:
"Q. Your arrangement with Stockwell was not discussed with the Sears officials? A. No.
"Q. Mr. Stockwell did not advise you he had disclosed it to his officials? A. No."

6. Proof as to the issue of damages is discussed within this opinion, infra.

7. Refer to the quoted portions of Kohlenberg's affidavit of June 22, 1954 contained in footnote 3; and Kohlenberg's deposition of June 22, 1954, page 16:
"Q. And when Stockwell would call up and ask for a check, did he leave it to you to compute the amount? A. If he asked me—he told me how much he had coming and I checked against the checks.
"Q. He would tell you how much he had coming and you would check it against what? A. The checks we got in.
"Q. Against your remittances from Stockwell? A. Yes. * * *

"Q. If you found a discrepancy and if you computed 5% of the remittances and they didn't come out equal to Stockwell's figure, what did you do? A. I just told him he had so much coming, I just told him he didn't have that coming."
The original answer filed by the defendant contains admissions that the payments were commissions:
"5. * * * Alleges in that behalf that said Louis Stockwell demanded that the defendant pay him a commission on sales which were being made by defendant to certain of plaintiff's stores in said Stockwell's territory and defendant did pay Stockwell a commission on certain sales. Defendant alleges that none of the commissions paid by defendant to Stockwell were charged to plaintiff in any manner * * *.
"6, 7. * * * Alleges that pursuant to Stockwell's demand defendant paid him commissions totaling $23,033.52 * * ."

8. Kohlenberg deposition of June 22, 1954, page 19:
"Q. What kind of an account did you have for these payments to Stockwell? What did you call the account? A. I think purchasing account, or buying account.
"Q. And you say you would make a notation showing they were for services? A. For buying or services for buying, or for services rendered.
"Q. So that you charged those off as an expense of the business? A. Yes.
"Q. So that you would get credit for them for income tax purposes? A. Not exactly, so we kept a record of it.
"Q. But in your annual accounting for tax purposes, were those charged off as an expense of doing business? A. Oh, Yes.
"Q. So you did get credit for them as an expense? A. Yes."

point toward only one conclusion and that is that the Wisconsin Court will follow the rule of the overwhelming majority of other jurisdictions.

The case of Weinhagen v. Hayes, 1921, 174 Wis. 233, 178 N.W. 780, 784, 183 N.W. 162, 187 N.W. 756, although based on a different fact situation and in which different relief was sought, does contain valuable guideposts relative to the duties of agents and third parties.

"It is the established law that the acceptance by an agent of a secret commission of compensation from the opposite party, where the agent is to exercise, on behalf of his principal, skill and judgment, vitiates the contract * * *."

The Court then goes on to comment on the wrongdoing of a third party who aids or abets the wrongdoing of an agent:

"Absolute fidelity and loyalty to the interests of his principal is the first duty and the highest obligation of an agent. An opposite party, negotiating a contract with an agent, may not deprive the agent's principal of the benefit of the agent's skill and judgment by paying him a commission, without the full knowledge and consent of the principal, and, if he does so, it operates as a fraud, actual or constructive, upon the principal, and he may for that reason repudiate the transaction."

■■■■ The defendant also claims that it had no fraudulent intent in making the "gratuitous" payments. The element of fraudulent intent need not be found as a positive fact under the constructive trust theory. It is enough if the Court makes a finding of constructive fraud. In re Will of Jaeger, 1935, 218 Wis. 1, 259 N.W. 842, 99 A.L.R. 738.

"A constructive trust * * * is a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." 54 Amer.Jur., Trusts, § 218.

■■■■ People are presumed to intend the natural and probable consequences of their acts. Payment of secret commissions under such circumstances can have only one purpose, namely, that of making the agent of the adverse party beholden to the person giving the secret commissions. Defendant has claimed that it was doing a great favor for the plaintiff in selling it plumbing supplies. It argued strenuously that plumbing supplies were scarce, that plaintiff could not have procured the plumbing supplies elsewhere at the time in question. Defendant's solicitude for plaintiff certainly went beyond the call of duty in giving plaintiff's purchasing agent "gifts" in excess of $26,000 "in order to do the plaintiff this great favor."

■■■■ Under the decisions herein referred to there is a conclusive presumption that defendant would have been willing to have sold these plumbing supplies for $26,244.04 less than it actually did sell them, being the amount, the percentage, that it paid Stockwell. No doubt the courts in adopting this rule did so for salutary reasons. Had the purchasing agent of a municipal corporation similarly accepted commissions from the seller, no doubt a charge of bribery would have been made.

■■■■ Defendant claims that, in any event, plaintiff was not damaged because plaintiff sold its supplies on a mark-up basis. In other words, if the mark-up was 20%, if the plaintiff paid $200,000 for plumbing supplies that it could have purchased for $160,000 (if the $40,000 had not been paid in commissions to Stockwell), plaintiff made more profit

than it would have made had the goods been sold to the plaintiff for $160,000. This, the Court believes, is an attempt to justify grossly improper conduct. The policies of the plaintiff with reference to mark-ups and selling prices were the plaintiff's to determine, not for the defendant. The plaintiff is merchandising goods in a highly competitive market. The Court can take judicial notice that there are many chain stores, mail order houses, plumbing supply houses and competitors in this type of business. It may well be the desire of the plaintiff to undersell, insofar as it is able to, its competitors and thus build up its goodwill and business.

Assuming any doubt as to whether defendant had any fraudulent intention, this statement from Weinhagen v. Hayes, supra, is applicable to this situation:

"While the plaintiff had no guilty intent or fraudulent purpose, his act operated nevertheless as a fraud upon the lessees."

■ The Court finds that the state of Wisconsin does give a cause of action to a principal where a third party has aided an agent to breach his duty of loyalty to said principal.

"Usage or custom, however long continued, does not warrant unfaithful, disloyal conduct on the part of an agent. Such conduct is abhorrent to the letter and spirit of the law, and cannot be justified under its forms." Weinhagen v. Hayes, supra.

"'His duty is to act solely for the benefit of the principal in all matters connected with his agency. This is a rule of common sense and honesty as well as of law. Any custom subversive of this principle must be deemed to be unreasonable, opposed to the policy of the law, and hence of no effect.'" Bank of California v. Hoffmann, 1949, 255 Wis. 165, 38 N.W.2d 506, 509, 39 N.W.2d 280.

Certainly, if unfaithful and disloyal conduct on the part of an agent is "abhorrent to the letter and spirit of the law" and "opposed to the policy of the law", it must logically follow that the conduct of a third party who aids an agent in the breach of his duty would fall into the same category.

■ Other jurisdictions have granted relief to principals for similar actions of third parties. Central Illinois Public Service Co. v. Schell, 1925, 238 Ill.App. 560; Donemar, Inc., v. Molloy, 1930, 252 N.Y. 360, 169 N.E. 610; In re Browning's Estate, 1941, 177 Misc. 328, 30 N.Y. S.2d 604; Kinzbach Tool Co. v. Corbett-Wallace Corporation, 1942, 138 Tex. 565, 160 S.W.2d 509; and Grant v. Gold Exploration and Development Syndicate, Ltd., 1 Q.B. 233 (1900). It is the opinion of the Court that the principles set forth in the Central Illinois Public Service Co. case, supra, govern the determination of this case. There the court stated:

"It is a well-settled rule, founded on grounds of public policy, that an agent employed to negotiate a sale, purchase, lease or exchange may not make a contract for compensation with the other party to the transaction. * * *

"The fact that no actual fraud exists, or that the principal is not actually injured, does not prevent the application of the above rule, which is not merely remedial of actual wrong, but is intended to be preventative of wrong."

The Illinois court went on to say that the third party became a trustee *ex maleficio* and subject to a court of equity. The Court then imposed a constructive trust upon the funds in question.

Counsel have cited no authority contrary to the cases above set forth and the Court has found none. Therefore, it is the opinion of the Court that in a similar situation the Wisconsin Supreme Court would follow the rule set forth in the foregoing decisions and grant relief,

on the basis of constructive trust, joint tort, or for moneys had and received.

■■■ While the Court finds that Wisconsin does give a right of action under the facts of this case, it has not declared what remedy it would make available. In matters of equity, a Federal court is not bound by the remedies available in the courts of the state in which it sits. Under the Equitable Remedial Rights Doctrine, this Court may apply an equitable remedy in accord with Federal practice even though such remedy might not exist in the State courts.

"State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. Contrariwise, a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it." Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 1468, 89 L. Ed. 2079.

■■ This Court, after due consideration of the facts as set forth, supra, hereby imposes a constructive trust on all payments made by defendant to Stockwell and finds that the defendant is a trustee *ex maleficio* of such funds. The Court finds that there is no issue of fact as to the amount of money paid by the defendant to Stockwell. The amount of those payments totals $26,244.04. That figure has been attested to by Kohlenberg, president of the defendant.[9]

The defendant in its amended answer denies "any knowledge or information sufficient to form a belief regarding plaintiff's knowledge of or consent to Stockwell's conduct and therefore denies that plaintiff did not know of Stockwell's conduct." The plaintiff in support of its motion for summary judgment submitted the affidavit of F. B. McConnell, president of plaintiff, who stated the policy of the company with reference to the acceptance of compensation, gifts or presents from suppliers of merchandise to plaintiff. Charles W. Bach and Wade Hampton, immediate supervisors of Stockwell, deposed that they never knew of commissions paid to Stockwell nor did they ever agree to any such commissions. In the face of these affidavits, the defendant has submitted nothing to contradict the veracity of those deponents; it has not submitted any affidavits or attempted to take any depositions relative to the knowledge of the plaintiff of the actions of Stockwell. Rule 56(f), Federal Rules of Civil Procedure, provides for the submission of an affidavit by a party opposing the motion that he cannot, for reasons stated, present, by affidavit, facts essential to justify his opposition. Such an affidavit has not been filed by the defendant nor has the defendant attempted to take depositions in order to cross-examine those officials

9. In Kohlenberg's deposition of June 22, 1954, pages 23 through 26, Kohlenberg identified an exhibit marked Stockwell's Deposition, Exhibit No. 2 which purported to be a tabulation of payments prepared by Kohlenberg and sent to Stockwell. Kohlenberg admitted that it was a correct report of the amounts of payments which appear on the company records. Said exhibit is reproduced in Plaintiff's Request For Admissions which was filed on January 25, 1954. Uncontradicted affidavit by Benedict S. Deinard attests that said exhibit is a true and correct copy of the document referred to at page 23 of the transcript of Kohlenberg's deposition of June 22, 1954, and exhibited to Kohlenberg during that examination. Exhibit No. 2 shows that defendant paid a total of $24,348.64 to Stockwell. See also Kohlenberg's deposition of March 12, 1953, pages 27, 35.

Exhibit No. 2 has reference to payments made by the defendant to Stockwell during the years 1947 through 1950. It appears, however, that further payments were made during the years 1951 and 1952. Those payments total $1,895.40. On page 36 of Kohlenberg's deposition of March 12, 1953, Kohlenberg listed the dates and amounts of further payments and admitted that the items were payments of commissions on sales to Sears.

**346**

of the plaintiff who either submitted affidavits or who were in a position to have knowledge of Stockwell's activities.

■ McConnell's affidavit was filed on August 23, 1954. The defendant has had ample opportunity to take some step under Rule 56 in order to ascertain the truth of the affidavits. Since it has not done so, this Court will assume that the affiants would make the same statements at trial as they have made in their affidavits. Dyer v. MacDougall, 2 Cir., 1952, 201 F.2d 265, 268; Foster v. General Motors Corp., 7 Cir., 1951, 191 F.2d 907, 912; Stahly, Inc., v. M. H. Jacobs Co., 7 Cir., 1950, 183 F.2d 914, 916.

■ Defendant has attempted to raise a claim of estoppel based upon alleged representations of plaintiff's attorney when he interviewed Kohlenberg just prior to the depositions in the Stockwell action. The Court is not prepared to hold that the defendant cannot make an issue of fact on the question of estoppel. In such a situation, under Rule 56(d), Federal Rules of Civil Procedure, it is the duty of the Court to narrow the issues so that upon the trial of the action all facts so found shall be deemed established and the trial can be conducted accordingly. The Court, therefore, orders that any trial in this action be limited to the affirmative defense of the claim of estoppel.

■ In the complaint relief was asked on two theories, joint tort, the other, constructive trust. The Court being of the opinion that it is a situation where constructive trust has been established, and this opinion being based on that ground, the action is of equitable nature and the trial on that issue will be in accord with the rules for trial of equity cases.

Plaintiff's counsel may make findings of fact and conclusions of law in accord with this decision, setting forth the findings of fact which are herein held to be without controversy, leaving open only the issue of estoppel, and a proposed order in accord with this decision and such findings. Said findings and proposed order are to be submitted to defendant's counsel for approval as to form only.