**WAGNER IRON WORKS**

v.

**UNITED STATES.**

No. 48–53.

United States Court of Claims.

July 13, 1959.

John Lipscomb, Washington, D. C., for plaintiff. Floyd F. Toomey, Thomas E. Jenks, and Alfred M. Osgood, Washington, D. C., were on the briefs.

John F. Wolf, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Francis J.

Steiner, Jr., Washington, D. C., was on the brief.

WHITAKER, Judge.

Plaintiff sues to recover its costs and damage which resulted by reason of the termination, for the convenience of the Government, of two contracts, one an experimental and the other a production contract, for the manufacture of compulsion systems for the Terrier Missile. The Government defends on the ground, among others, that the plaintiff's termination claim was fraudulent, and, therefore, that it is forfeited to the United States under section 2514 of Title 28 U.S.C.[1] In addition, the Government counterclaims to recover double damages and a $2,000 penalty under the False Claims Act, 31 U.S.C.A. § 231. We consider this question first, since, if it is answered in the affirmative, it will be unnecessary to consider the other questions propounded.

From the record, it appears that during the period when the two contracts here involved were being performed the plaintiff's president and majority stockholder, Mr. A. A. Wagner, and the vice president and owner of substantially all of the remaining stock, Mr. A. J. Werner, caused the corporation to pay certain of their personal expenses, which affected the termination claims. Mr. Wagner employed the Black-Top Specialty Company to construct a tennis court and paved driveway at his house in the country. He not only caused the plaintiff company to pay for this work, but prepared a false invoice, so that, upon an examination of the company books, it would appear that the work had been done for the company. Mr. Wagner also had the company pay for a number of other personal expenses. These included such items as the funeral expenses of his father-in-law, fuel oil and gas delivered to his home, etc.

Werner also caused the company to pay for services and material for his own personal benefit. In one instance, he had a plumbing company perform some work on his mother's home, which was paid for by the plaintiff company. He, too, had the plaintiff provide and pay for fuel oil and gas at his home for his personal use. Also, on another occasion the company paid for a heating plant to provide heat for his swimming pool.

The total of the personal expenses of Wagner and Werner paid for out of corporate funds aggregates between seventy-five and one hundred thousand dollars, the majority of which were for Wagner's personal expenses.

All of the above expenses were charged to various company operating accounts, and were included in the company's total indirect operating and administrative expenses. These expenses were allocated in part to the Government contracts, and in part to other contracts, and were reflected in the termination claims. Plaintiff prepared statements using seven percent of its total indirect expenses as the amount allocable to the Navy contracts. Thus, $5,535.53, or seven percent of $79,009.72, of personal expenditures were included in these cost schedules filed in support of the termination claims. These were submitted to the Navy Department in April 1954 for payment, and when that was denied, they were filed in this court on June 29, 1954, pursuant to Rule 28(b)(2), 28 U.S.C., as the basis for plaintiff's claim against the United States.

Shortly after they had been filed in this court, the plaintiff was notified that the Federal Bureau of Investigation would audit plaintiff's books pursuant to

---

1. Section 2514 reads:
"A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

"In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture."

Rule 28(b)(3) of this court. On learning of this, Wagner, in early October 1954, presented a list of invoices to Werner, and confessed that they had been paid for by the company, although they were for his own personal use. In consequence, at a meeting of the Board of Directors on November 22, 1954 Wagner was forced to resign as president, and Werner was elected to that position. Immediately thereafter, Werner repaid the company some or all of the amounts paid for his personal expenses, and he informed the Federal Bureau of Investigation that the schedules filed were incorrect and that revised cost schedules would be filed, and they have since been filed in this court, from which all ascertainable personal items have been deleted.

That Wagner defrauded the corporation of which he was president is admitted; but that, of course, is not the issue here. The fraud committed against the United States consists of the presentation to the Navy and to this court of statements claiming that plaintiff had spent sums in the performance of the contracts which in fact had not been so expended, but, on the contrary, had been expended for the personal benefit of its officers. The issue is whether these fraudulent acts are to be imputed to the plaintiff company.

It has been often stated that a corporation can act only through its officers and agents, and when they are clothed with the authority to act for it, the corporation is responsible for their acts. Gleason v. Seaboard Air Line Ry. Co., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415; Standard Surety & Cas. Co. of New York v. Plantsville Nat. Bank, 2 Cir., 158 F.2d 422; Ralston Purina Co. v. Novak, 8 Cir., 111 F.2d 631. Wagner, the president, was authorized to prepare and present for payment vouchers showing the plaintiff's costs in the performance of the government contracts. When he presented statements which he knew contained costs which were not spent in their performance, he undertook on behalf of the corporation to secure from the United States funds to which he knew the corporation was not entitled. The corporation stood to benefit from the fraud he attempted to practice on its behalf, and having clothed him with authority to present vouchers for payment, the corporation is responsible for his actions.

Plaintiff, however, says that since the fraud against the United States was the outgrowth of the fraud against the company by its president, his acts should not be imputed to it. It says that when the other stockholder, holding almost 50 percent of the stock, learned of Wagner's defalcation, he caused Wagner to surrender his office of president, and then caused the plaintiff to immediately repudiate Wagner's acts and to promise to file corrected statements as soon as the true facts could be ascertained, which was done after the investigation was completed.

If Wagner alone had been guilty of fraud, there might be some merit in plaintiff's argument. However, Werner, the vice president and the holder of nearly 50 percent of the stock, also made use of corporate funds for his personal expenditures, although not to the extent that Wagner did.

It was not until the extent of Wagner's defalcations had been indicated, and the Federal Bureau of Investigation had come into the matter, that Werner reimbursed the corporation for the sums it had expended some two years or so earlier for Werner's personal benefit. It was only under the stress of such circumstances that Werner notified the Federal Bureau of Investigation that the cost schedules were false.

Wagner owned approximately 53 percent, and Werner, 46.5 percent of the outstanding stock of plaintiff corporation. They were president and vice president, respectively, and controlled the Board of Directors. They were, in fact, the corporation and, therefore, their fraud is the corporation's fraud.

Judgment of forfeiture of plaintiff's claim against the United States will be

entered, and plaintiff's petition is dismissed.

The defendant also counterclaims pursuant to section 231 of Title 31 U.S. C.A. Section 231 provides that every person knowingly making a false claim against the United States shall forfeit $2,000 and pay double the damages sustained. In the instant case, the presentation of the cost schedules to the Navy Department for payment constituted a false claim against the United States. Since the defendant has neither alleged nor proven damages, its recovery under its counterclaim is limited to $2,000. Defendant is given judgment against the plaintiff on its counterclaim in the sum of $2,000.

It is so ordered.

ALBERT V. BRYAN, District Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.