213 So.2d 477 (1968)
The MARTIN COMPANY, a Maryland Corporation Authorized to Do Business in the State of Florida, and Walter I. Dobar, Appellants,
v.
COMMERCIAL CHEMISTS, INC., a Florida Corporation, Appellee.
No. 744.
District Court of Appeal of Florida. Fourth District.
July 23, 1968.
Rehearing Denied September 11, 1968.
*478 John V.A. Holmes and George T. Eidson, Jr., of Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, for appellant, The Martin Co.
J. Russell Hornsby, of Law Office of J. Russell Hornsby, Orlando, for appellant, Dobar.
Arthur L. Steed, of Steed, Urban & Collins, Orlando, for appellee.
REED, Judge.
This was a suit in equity by The Martin Company as plaintiff (hereafter referred to as "Martin") against Walter I. Dobar (hereafter referred to as "Dobar") and Commercial Chemists, Inc. (hereafter referred to as "Commercial Chemists") as defendants to recover secret profits allegedly made by Dobar during 1957, 1958 and 1959 while in the employ of Martin. Commercial Chemists was joined in the suit on the ground that it conspired with Dobar in a scheme contrived by Dobar to make the secret profits on contracts between Commercial Chemists and Martin. The defendants' answers substantially denied the allegations of the complaint, and Commercial Chemists asserted a counterclaim against Martin for $7,700 for services rendered in the form of chemical analyses of water and material.
The evidence indicated that Dobar was employed by Martin as a chemist sometime in the year 1956. One of his duties was to survey independent chemical laboratories throughout the State of Florida and to report to his employer on their capabilities to perform certain chemical and physical tests which Martin would require. Prior to his employment with Martin, Dobar had been an employee of Commercial Chemists which operated a commercial chemical laboratory based in Jacksonville, Florida. In the course of his survey of the independent laboratories in the state Dobar contacted Commercial Chemists and advised its officers that Martin would require certain chemical and physical tests. This led to contacts between officers of Commercial Chemists and personnel of Martin and, ultimately, to a blanket contract between Martin and Commercial Chemists whereby a price scale was set to establish the cost of the testing. No actual work was apparently done under this contract, but work was thereafter performed by Commercial Chemists for Martin on the basis of specific purchase orders issued by Martin for individual pieces of work required.
*479 During the early part of the relationship between Martin and Commercial Chemists, the latter performed the required work in Jacksonville with its own personnel and equipment or subcontracted the work.
In late 1957 Dobar worked out an arrangement with Commercial Chemists whereby Dobar secured chemists in Orange County, Florida, where Martin is located to perform the tests required by Martin's purchase orders to Commercial Chemists. Thereafter, as Martin issued purchase orders to Commercial Chemists, Dobar would take the samples to chemists in Orange County who performed the actual tests. Reports of the tests were prepared on forms supplied by Commercial Chemists and bearing their letterhead. Commercial Chemists would review the reports and bill Martin for the work done in Orange County by the chemists secured by Dobar. Upon receiving payment from Martin, Commercial Chemists would retain 20% and pass on 80% to Dobar. Dobar would then pay the local chemists and retain the balance which apparently amounted to a sizeable profit.
When this arrangement between Commercial Chemists and Dobar commenced, officers of Commercial Chemists expressly inquired of Dobar as to his authority to handle the work of his employer in the fashion outlined above. Each of such officers stated that Dobar said that he had received authority to so handle Martin's work from the legal department of Martin. The officers of Commercial Chemists testified that they thought their contribution to the work and the consideration for their 20% share of the billings was their efforts in reviewing the reports and their responsibility to Martin.
The trial court found and the record supports a conclusion that during the period from the start of this arrangement in 1957 between Dobar and Commercial Chemists to its conclusion in 1959 Dobar received from Commerial Chemists $61,661.70 and incurred, during the same period in connection with the work, total expenses of $20,466.98. Thus, it appears from the record that Dobar netted $41,194.72 in profits from work done under purchase orders from his employer, Martin, to Commercial Chemists.
The record also contains testimony to support the conclusion of the trial court that Martin was in fact unaware of Dobar's participation in Martin's contracts with Commercial Chemists.
It was stipulated by Martin and Commercial Chemists that during the latter part of 1959, shortly before Martin acquired knowledge of Dobar's dealings, that Commercial Chemists had submitted to Martin three invoices totalling $7,700. It was further stipulated that the work covered by these invoices was done in a workmanlike manner, that the charges were reasonable and unpaid, and the work was done in Orange County by a chemist secured by Dobar. Consequently, the record compels the conclusion that the work which gave rise to the invoices was performed under the aforesaid arrangement between Dobar and Commercial Chemists.
The trial court in a very detailed opinion found that Dobar, during his employment with Martin, bore a fiduciary relationship to his employer and that during the course of this employment he had secured secret profits from the contracts between Martin and Commercial Chemists in the net amount of $41,194.72. The trial court also found that Commercial Chemists did not have knowledge that Dobar lacked authority to deal with his employer's work in the manner aforesaid and that Martin was unaware of Dobar's double dealing. On the basis of this finding the trial court held that Commercial Chemists was not liable to Martin as a conspirator with Dobar.
The trial court awarded a judgment in favor of Martin against Dobar for the full amount of the secret profits, to-wit, $41,194.72, but awarded judgment against Martin in favor of Commercial Chemists for the full amount of the latter's counterclaim which was based on the three invoices totalling *480 $7,700. As against the judgment in favor of Commercial Chemists, the trial court permitted a set-off in favor of Martin in the amount of $5,600 which was admittedly owed by Commercial Chemists to Martin for a survey of water in Shingle Creek which, although it had been paid for, was never performed.
Martin appeals from the final judgment. Dobar joined in the appeal.
Martin asserts that the trial court erred in not entering judgment against Commercial Chemists as a conspirator and that the trial court erred in its handling of Commercial Chemists' counterclaim for $7,700.
Martin argues that Commercial Chemists was charged with the duty of inquiring of Martin as to Dobar's authority to participate with Commercial Chemists in the performance of Martin work and could not rely on representations made by Dobar.
Where a third party (in this case Commercial Chemists) deals with another's agent (in this case Dobar) with knowledge that the agent is acting in violation of his fiduciary obligation to his principal (here Martin) the third party may be held jointly liable with the agent for secret profits. B.F. Goodrich Co. v. Naples, S.D.Cal. 1954, 121 F. Supp. 345; Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation, 1942, 138 Tex. 565, 160 S.W.2d 509. In the Kinzbach case, an employee of Kinzbach Tool Co., one Turner, was contacted by Corbett-Wallace, Inc. Corbett-Wallace, Inc. had a sales right contract on a certain type of tool and desired to sell this contract to Turner's employer, Kinzbach Tool Co. Corbett-Wallace, Inc. told Turner that it would sell the contract for $20,000 and pay Turner a commission out of the $20,000 and asked Turner to attempt to interest his employer in the contract. Corbett-Wallace instructed Turner not to reveal to his employer that the contract was available for $20,000 because Corbett-Wallace desired to get as much as possible for it. Turner later succeeded in selling the contract to his employer for $25,000. From this amount Corbett-Wallace agreed to pay Turner a commission of $5,000. The Supreme Court of Texas held that both Turner and Corbett-Wallace were equally liable to Turner's employer for the amount of the commission. The rationale of the holding was expressed on page 514 as follows:
"It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such. * * *"
The rule is perhaps best stated in Restatement of the Law, Agency 2d, Section 313, 1958, as follows:
"A person who, knowing that the other party to a transaction has employed an agent to conduct a transaction for him, employs the agent on his own account in such transaction is subject to liability to the other party, unless he reasonably believes that the other party acquiesces in the double employment."
This rule turns liability of a third party dealing with the unfaithful agent on the reasonableness of the third party's belief as to the acquiescence or consent of the agent's principal. Thus, in the present case, the critical issue of fact was whether or not Commercial Chemists was reasonable in its belief as to Dobar's authority. While competing inferences could be drawn from the testimony, we conclude that there was competent substantial evidence to support a finding that Commercial Chemists had a reasonable belief in Dobar's authority and Martin's acquiescence in his activities. It follows that the trial court's decree for Commercial Chemists on the complaint must be affirmed.
Martin also contends that it was error for the trial court to have allowed Commercial Chemists a recovery for the entire $7,700 represented by its aforementioned invoices. Martin argues that, because the work was performed under the arrangement with Dobar whereby Commercial *481 Chemists would have received only 20% of the amount billed to Martin, the trial court's decree allows Commercial Chemists more than it would have received under such arrangement and, to that extent, a windfall.
Commercial Chemists argues that, depite its arrangement with Dobar, Commercial Chemists is liable to the Orange County chemist who actually performed the analyses represented by the invoices and, therefore, should receive the entire $7,700 so that it can pay the person who actually did the work.
Since Commercial Chemists saw fit to submit its claim for the $7,700 to the court sitting in equity, it cannot claim unconscionable relief nor any relief except under the condition that it do equity by recognizing and accommodating the equitable claims of its adversary, Martin. Taylor v. Rawlins, 1923, 86 Fla. 279, 97 So. 714, 35 A.L.R. 271; Tampa & Jacksonville Ry. v. Catts, 1920, 79 Fla. 235, 85 So. 364. In our opinion it was a violation of this principle to have allowed Commercial Chemists a judgment for the full amount of $7,700 where the evidence clearly showed that some part of that amount represented a secret profit which, but for the discovery of Dobar's activities by Martin, would have gone to Dobar.
When the court took jurisdiction over the counterclaim it had jurisdiction to give full, complete and adequate relief as between all parties interested in the counterclaim. Tremont Company v. Paasche, Fla. 1955, 81 So.2d 489. It is our opinion that more complete relief would have been achieved if the trial court had made a determination as to the net profit which Dobar would have received from the $7,700 but for the interruption of his arrangement with Commercial Chemists and had allowed Commercial Chemists to recover from Martin $7,700 less the amount of such net profit. It is our conclusion, therefore, that that portion of the final decree which allows recovery from Martin for the full amount of $7,700 in favor of Commercial Chemists should be reversed. In all other respects the final decree is affirmed.
On remand, the trial court should determine, after receiving such additional evidence as may be necessary and available, the amount of such net profit and then award Commercial Chemists $7,700 less the amount found to equal said net profit. The amount so found due Commercial Chemists shall be set off against the amount of $5,600 owed to Martin by Commercial Chemists. This may, of course, result in a net judgment in favor of Martin.
We have considered each of the points raised by Dobar in his brief and have reviewed the entire record for the purpose of evaluating them, but do not believe that such points require treatment in this already lengthy opinion.
This cause is remanded for further proceedings in accordance herewith.
Affirmed, in part; reversed, in part.
CROSS and McCAIN, JJ., concur.