CONTINENTAL MANAGEMENT, INC.
and Stateside Investment Corp., Plaintiffs, Federal Deposit Insurance Corporation, Third-Party Plaintiff,

v.

The UNITED STATES.

No. 223–74.

United States Court of Claims.

Dec. 17, 1975.

614

J. Michael Hines, Washington, D. C., for plaintiff; James A. Treanor, III, attorney of record. Daniel M. Redmond and Dow, Lohnes & Albertson, Washington, D. C., of counsel.

Werner Goldman, Washington, D. C., for Federal Deposit Ins. Corp., third-party plaintiff; Douglas H. Jones, Washington, D. C., of counsel.*

Alexander Younger, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, for defendant; Leslie H. Wiesenfelder, Washington, D. C., of counsel.

Before DAVIS, NICHOLS and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST COUNTERCLAIM AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS, Judge.

Continental Management and State-Side Investment have sued the United States for sums allegedly due them under contracts of mortgage insurance issued by the Federal Housing Administration (FHA). The Government has responded with an answer, a special plea in fraud, and four counterclaims. Only the first counterclaim, in which the Government seeks to collect from plaintiffs an amount equal to the sum of bribes paid by a former president of the plaintiffs' predecessor corporation to employees of the FHA and the Veterans Administration (VA), is before the court at this time on the parties' cross-motions.

---

* The third-party plaintiff did not participate in the presentation or argument of the motions disposed of in this opinion.

Continental Management, formerly Inter-Island Mortgagee Corp. (Inter-Island), and State-Side Investment, a wholly owned subsidiary of Continental Management and the successor of the former Inter-Island of Puerto Rico, are mortgage bankers. Until 1972 they (their predecessors) were FHA-approved mortgagees, engaged in originating mortgages for insurance by the FHA or for guaranty by the VA. The companies were suspended as approved mortgagees in that year because an extensive FBI investigation uncovered evidence that officers and employees of Inter-Island had violated federal statutes prohibiting bribery, conspiracy, and the making of false statements to the Department of Housing and Urban Development. The FBI in its investigation focused, as does the Government in its first counterclaim, on the activities of Stanley Sirote, then president and a member of the board of directors of Inter-Island and then and now the principal stockholder of Inter-Island/Continental Management. In an affidavit executed before the suspensions, Sirote detailed payments of money and gifts made by him to numerous FHA and VA employees responsible for appraising property and approving or disapproving applications for mortgage insurance or guaranty submitted by Inter-Island. Subsequently, Sirote pleaded guilty to four bribery charges and four FHA employees also pleaded guilty to bribery.[1]

The counterclaim challenged here asks for recovery from plaintiffs of the bribes paid by Sirote to the federal employees. The claimants move to dismiss this cross-demand as failing to state a claim; the defendant has reacted by seeking summary judgment that the companies are liable on this counterclaim. As will appear, we hold that the counterclaim embodies a proper demand and that the existing record is sufficient to sustain summary judgment for the Government.

The basic underlying facts are indisputable. The payment of the bribes is attested by Sirote's criminal convictions, the convictions of the bribed federal employees, and by Sirote' own affidavit. Clearly, he was a conscious wrongdoer. His conduct violated not only moral precepts but also the federal criminal statute prohibiting bribery of officials, 18 U.S.C. § 201(f), and the rigid standard of conduct established by that statute. *Cf. United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 549–51, 559, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961). There is also no doubt that Inter-Island and its successors are responsible for his acts, committed while he was president of Inter-Island. *See Wagner Iron Works v. United States,* 146 Ct.Cl. 334, 337–38, 174 F.Supp. 956, 958 (1959), and cases cited. On the other hand, there is no proof or suggestion that the bribes were related, in any specific way, to the particular mortgage transactions on which plaintiffs sue.

■ Thus, the issue raised by the parties' cross-motions is whether Sirote's actions give rise to liability by the briber to the Government for an amount equal to the bribes, where the Government has shown only that such unlawful payments were made and has not proved direct or specific monetary injury. Contending that the Government must prove the damage resulting from the illegal acts, the plaintiffs assert, as their major point, that the Government's failure to allege provable, measurable damages and a nexus between Sirote's conduct and specific monetary harm to the Government calls for dismissal of the counterclaim, or at best a remand for trial. The defendant replies that the interference with the principal-agent relationship between it and its employees is damage enough, as well as a compensable wrong, that it need prove no other injury, and that on this type of record the amount

---

1. The Government attached Sirote's affidavit and the indictments and informations against Sirote and the four FHA employees as supporting documentation for its motion for partial summary judgment.

of the bribes is a sufficient measure of damage.[2]

Though we know of no American case which directly confronts this precise point, an impressive accumulation of decisions pushes hard toward acceptance of the Government's position. It is well-established, as plaintiffs seem to concede, that a third party's inducement of or knowing participation in a breach of duty by an agent is a wrong against the principal which may subject the third party to liability. *See, e. g., Martin Co. v. Commercial Chemists, Inc.,* 213 So.2d 477, 480 (Fla.Dist.Ct.App.1968), *cert. denied,* 225 So.2d 523 (Fla.1969); *Hirsch v. Schwartz,* 87 N.J.Super. 382, 209 A.2d 635, 640 (App.Div.1965); *Singer Sewing Machine Co. v. Lang,* 186 Wis. 530, 203 N.W. 399, 401 (1925); Restatement (Second) of Agency § 312 (1958). In nearly unbroken succession, courts have declared that victimized principals may obtain non-statutory remedies against outsiders who have knowingly participated in or induced an agent's breach of duty. *See City of Boston v. Simmons,* 150 Mass. 461, 23 N.E. 210, 212 (1890) (agent and third party jointly liable where they participated in scheme under which third party bought land that agent knew city might buy, sold it to city at a profit, and divided the profit with agent); *City of Findlay v. Pertz,* 66 F. 427, 434–35, 440 (6th Cir. 1895) (contract between city and third party may be voided, unless city has ratified, where third party has paid commissions to city's purchasing agent); *Singer Sewing Machine Co. v. Lang, supra* (third party liable to principal for damages where inference was strong that third party encouraged or induced agents' breach of duty); *Central Illinois Public Service Co. v. Schell,* 238 Ill.App. 560, 565 (1925) (third party was trustee *ex maleficio* of moneys received from principal and paid

to agent as kickbacks); *Donemar, Inc. v. Molly,* 252 N.Y. 360, 169 N.E. 610, 611 (N.Y.1930) (seller and purchaser's agent liable for amount of bribe former paid to latter); *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942) (third party and agent are joint tortfeasors where third party participates in agent's breach of duty; seller and buyer's agent liable for commission paid by seller to buyer's agent); *Anderson v. Thacher,* 76 Cal.App.2d 50, 172 P.2d 533, 545 (1946) (judgment may be entered against those who participated in agent's breach of duty after a sum is found to be due from the agent); *Hunter v. Shell Oil Co.,* 198 F.2d 485, 488–89 (5th Cir. 1952) (agent and third parties were constructive trustees of mineral interests acquired on basis of confidential information disclosed by agent); *B. F. Goodrich Co. v. Naples,* 121 F.Supp. 345, 348 (S.D.Cal.1954) (all who participate in agent's acquisition of secret profits in breach of his duty are liable with the agent for the secret profits, regardless of whether they benefit from the agent's breach); *United States v. Davio,* 136 F.Supp. 423, 428 (E.D.Mich. 1955) (at common law, third parties are liable to principal for kickbacks paid to agents, regardless of proved damage to the principal); *Sears, Roebuck & Co. v. American Plumbing & Supply Co.,* 19 F.R.D. 334, 342–45 (E.D.Wis.1956) (third party liable to principal for commissions paid to principal's purchasing agent); *Hirsch v. Schwartz, supra* (third party who causes or assists agent's breach of duty may be liable to principal); *Martin Co. v. Commercial Chemists, Inc., supra* (third party would have been jointly liable with the agent for agent's secret profits if participation in agent's breach of duty had been knowing). *But see Kuntz v. Tonnele,* 80 N.J.Eq. 373, 84 A. 624, 626 (1912) (third party not liable for

---

**2.** Under this court's counterclaim statute (28 U.S.C. § 1503) and our rules (Rule 40) the Government may set up a counterclaim even though (a) it does not arise out of the transaction or occurrence that is the subject matter of the petition and (b) it states a claim of a type (e. g. tort) of which we would not have juris-

diction if sought to be maintained by a plaintiff. *See Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946); *Frantz Equip. Co. v. United States,* 105 F.Supp. 490, 494–96, 122 Ct.Cl. 622, 628–31 (1952).

one portion of agent's secret profit though he knowingly paid commission to agent).

▮ These cases, perhaps technically distinguishable from that at bar by the fact that the monetary consequences of the agents' nefarious dealings with the third parties could be said to be clearer or more specific, enunciated or reflected the broad principle that an agent's receipt of secret profits injures the principal because it necessarily creates a conflict of interest and tends to subvert the agent's loyalty. Their reasoning suggests that all who knowingly participate in a scheme by which an agent obtains secret profits should be held liable to the principal. See City of Findlay v. Pertz, 66 F. 427, 434–35 (6th Cir. 1895), quoted in United States v. Carter, 217 U.S. 286, 307–08, 30 S.Ct. 515, 54 L.Ed. 769 (1910); B. F. Goodrich Co. v. Naples, 121 F.Supp. 345, 348 (S.D.Cal.1954); Sears, Roebuck & Co. v. American Plumbing & Supply Co., 19 F.R.D. 334, 342–44 (E.D.Wis. 1956); Anderson v. Thacher, 76 Cal. App.2d 50, 172 P.2d 533, 545 (1946); City of Boston v. Simmons, 150 Mass. 461, 23 N.E. 210, 212 (1890); Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942); Martin Co. v. Commercial Chemists, Inc., 213 So.2d 477, 480 (Fla.Dist.Ct.App.1968), cert. denied, 225 So.2d 523 (1969). The opinions evidence the strong policy against the payment of money or other benefits to another's agent,[3] a commitment to giving full relief to the principal, a willingness to draw all reasonable inferences from the available evidence, and a flexibility in devising remedies to run against all available participants. See especially City of Findlay v. Pertz, supra at 435; Sears, Roebuck & Co. v. American Plumbing & Supply Co., supra at 342–45; Singer Sewing Machine Co. v. Lang, 186 Wis. 530, 203 N.W. 399, 401 (1925); Hunter v. Shell Oil Co., 198 F.2d 485, 489, 490 (5th Cir. 1952). See also D. Dobbs, Remedies 684 (1973).

▮ A sister line of decisions indicates that the violation of a statutory standard of conduct should normally meet with civil sanctions designed to effectuate the purpose of the statute infringed. See United States v. Acme Process Equip. Co., 385 U.S. 138, 145, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966); United States v. Mississippi Valley Generating Co., 364 U.S. 520, 548–51, 563, 81 S.Ct. 294, 5 L.Ed.2d 820 (1961); Brown v. United States, Ct.Cl., 524 F.2d 693, 699, 700 (1975); Donemar, Inc. v. Molloy, 252 N.Y. 360, 169 N.E. 610, 611 (1930); 34 Hillside Realty Corp. v. Norton, 198 Misc. 302, 101 N.Y.S.2d 437, 440 (1950). The purpose of the bribery statute—the protection of the public from the corruption of public servants and the evil consequences of that corruption—will obviously be furthered by the recognition of a civil remedy. See Kemler v. United States, 133 F.2d 235, 238 (1st Cir. 1942).

▮ And so we come to the ultimate and precise issue—what sort of damage

---

3. A few quotations will convey the judicial attitude toward subversion of an agent's loyalty.

"Any agreement or understanding by which his [a public servant's] judgment or duty conflicted with his private interest was corrupting in its tendency. * * * The conflict created [by the payment of secret commissions] between duty and interest is utterly vicious, unspeakably pernicious, and an unmixed evil." City of Findlay v. Pertz, 66 F. 427, 435 (6th Cir. 1895), quoted in United States v. Carter, 217 U.S. 286, 307–08, 30 S.Ct. 515, 54 L.Ed. 769 (1910).

"Certainly, if unfaithful and disloyal conduct on the part of an agent is 'abhorrent to the letter and spirit of the law' and 'opposed to the policy of the law', it must logically follow that the conduct of a third party who aids an agent in the breach of his duty would fall into the same category"
Sears, Roebuck & Co. v. American Plumbing & Supply Co., 19 F.R.D. 334, 344 (E.D.Wis.1956).

"The [conflict of interest] statute is directed at an evil which endangers the very fabric of a democratic society, for a democracy is effective only if the people have faith in those who govern, and that faith is bound to be shattered when high officials and their appointees engage in activities which arouse suspicions of malfeasance and corruption."
United States v. Mississippi Valley Generating Co., 364 U.S. 520, 562, 81 S.Ct. 294, 315, 5 L.Ed.2d 820 (1961).

proof must the Government make when it sues the briber—from a rich judicial history stressing receptivity to the principal's request for monetary redress. Against that background, says the defendant-counterclaimant, it is enough to show the fact and amount of the bribes—nothing further need be alleged or proved by way of specific or direct injury.

We accept that position. Assuming (as we do) that the predicate for a nonstatutory civil remedy is the probability that damage will flow from the giving of the bribe, we think it clear from common experience that such probability ordinarily accompanies the subversion of public officials. In normal course the briber deprives the Government of the loyalty of its employees, upon which the Government and the public must rely for the impartial and rigorous enforcement of government programs. *See, e. g., City of Findlay v. Pertz,* 66 F. 427, 434–35 (6th Cir. 1895). Bribery of officials can also cause a diminution in the public's confidence in the Government, upon which the Government must also rely. *See United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 562, 81 S.Ct. 294, 5 L.Ed.2d 820 (1961). The Government likewise incurs the administrative costs of firing and replacing the venal employees and the costs of investigation, all of which are compensable in fraud cases. *See United States v. Rex Trailer Co.,* 218 F.2d 880, 884 (7th Cir. 1955), *aff'd on other grounds,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

These generalizations, supported by common sense and community experience, are made more concrete by the documentation in this particular case. According to the affidavit of Stanley Sirote, his assumption (by way of bribe) of a $30,000 loss of FHA Director Donald Carroll secured the promotions of two bribed FHA employees to positions involving the exercise of greater discretion with respect to mortgage insurance applications, in violation of the government's merit promotion regulations. *Cf. Hornsby v. Allen,* 326 F.2d 605, 609–10 (5th Cir. 1964) (the preference of one applicant for a license over another equally qualified applicant as result of a clandestine arrangement injures the disappointed applicant and the public, which has the right to expect adherence to standards and adjudication on the basis of merit). The affidavit suggests other ways in which the plaintiffs benefited from the bribery at the probable expense of the Government: Money was paid one employee to assign the "right appraisers" (on about six occasions); an appraiser was paid $50 per house with respect to 30–60 houses; one employee was paid on three occasions for help on escrow problems; and another was paid "to work four of my FHA cases." The affidavit outlines several other payments to several other employees, payments extending as far back as seven or eight years before the execution of the document.

"Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby." *Kemler v. United States,* 133 F.2d 235, 238 (1st Cir. 1942). *See also Sears, Roebuck & Co. v. American Plumbing & Supply Co.,* 19 F.R.D. 334, 343 (E.D.Wis.1956). Equally obviously, no businessman would continue a comprehensive program of bribes totaling thousands of dollars over a period of years, as Sirote did, if that program was not successful. Sirote's success had to come at the expense of the Government in some way, for plainly Sirote did not pay government employees to act in the federal interest. The plaintiffs, responsible as they are for Sirote's illegal conduct, cannot seriously contend that, because the Government has not offered to prove damages more specific than these, we must assume that the plaintiffs gained nothing and the Government lost nothing. *Cf. Donemar, Inc. v. Molloy,* 252 N.Y. 360, 169 N.E. 610 (1930), in which the highest court of the state of New York said, "Penal Law * * * § 439, makes it a misdemeanor to give or receive money for the corrupt influencing of agents, employees, or servants. It would be a strange miscarriage of justice

if the corrupting vendor and the corrupted agent of the vendee could retain the fruits of their crime and say that because the settlement was a fair one, the vendee sustained only nominal damages or no damages." *Id.* at 611.

It is an old maxim of the law that, where the fact of injury is adequately shown, the court should not cavil at the absence of specific or detailed proof of the damages. *See Petrovich v. United States,* 421 F.2d 1364, 1367, 190 Ct.Cl. 760, 766–67 (1970). Here, the plaintiffs engaged in wrongful conduct that clearly hurt the Government. Significant elements of that harm, such as the injury to the impartial administration of governmental programs, are not susceptible to an accurate monetary gauge. We should not deny the Government relief because Sirote managed to cause injury not readily traceable or measurable. Similarly, the Government's inability to attach an exact and provable dollar figure to the harm it sustained should not result in the effective exculpation of the plaintiffs. As the Supreme Court has said:

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931); *cf. Donemar, Inc. v. Molloy, supra.* As between the briber and the bribee's employer, the risks of damage determination should fall on the former.

On this premise the amount of the bribe provides a reasonable measure of damage, in the absence of a more precise yardstick. That is, after all, the value the plaintiffs placed on their corruption of the defendant's employees; the other side of the coin is that the plaintiffs hoped and expected to benefit by more than the sum of the bribes. It is therefore fair to use that total as the measure of an injury which is probable in its impact but uncertain in its mathematical calculation. *See* D. Dobbs, Remedies 701–02 (1973); *cf. id.* at 684 n. 33; W. Seavey, Agency § 118 (1964). Moreover, there is support for this result in the views of the courts that have declared that all knowing participants in a scheme involving an agent's breach of duty may be held jointly liable to the principal for the agent's secret profits.[4] *B. F. Goodrich Co. v. Naples,* 121 F.Supp. 345, 348 (S.D.Cal.1954); *Anderson v. Thacher,* 76 Cal.App.2d 50, 172 P.2d 533, 545 (1946); *Martin Co. v. Commercial Chemists, Inc.,* 213 So.2d 477, 480 (Fla. Dist.Ct.App.1968), *cert. denied,* 225 So.2d 523 (Fla.1969); *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942).[5] Of course, the Government cannot recover the bribes twice—once from the briber and again from the corrupted employee. But it is entitled to one such recovery.[6]

In the light of the preceding discussion, we can dispose rather briefly of two other, related arguments which

---

**4.** If the third party is considered a joint tortfeasor with the agent and is liable for the secret profits as a joint tortfeasor (*Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942) (Texas law)), the third party can be held liable alone, not merely jointly, for the secret profits since the liability of a joint tortfeasor is joint and several. 59 Am.Jur.2d *Parties* § 124 (1971).

**5.** In two of these cases, *B. F. Goodrich* and *Anderson,* the courts held expressly that participants were liable even if they had not benefited from the transactions.

**6.** If there be cases in which the facts are such that the Government suffered no injury from the bribe (or a harm less than the amount of the bribe), then we think those circumstances are likely to be so rare and exceptional that the briber should have the burden of demonstrating the lack of equivalent harm. That is most certainly not this case, and plaintiffs are far from showing that no damages, or lesser damages, were in fact incurred.

plaintiffs raise. First, they say that the Government's cause of action is a penal one which cannot be pursued because the Government has not alleged any statutory basis for the claim and Sirote has already been punished under the only legislation providing a penalty for the wrongful conduct, 18 U.S.C. § 201(f). Second, they urge that, because Congress has dealt extensively with bribery and fraud by statute, this court's creation of a further bribery "penalty" would be inappropriate.

 The first of these points fails because the Government's cause of action is not penal. It is remedial, designed to compensate the Government for the harm it has suffered. The Supreme Court has found congressional provisions for the award of $2,000 plus double damages in certain fraud statutes to be remedial, intended to assure the Government compensation where the full extent of damages is likely to be difficult to prove. *Rex Trailer Co. v. United States,* 350 U.S. 148, 151–54, 76 S.Ct. 219, 100 L.Ed. 149 (1956); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549, 551–52, 63 S.Ct. 379, 87 L.Ed. 498 (1943). The key to whether a recovery would be penal is whether the claimed amount is unreasonable or excessive. *See Rex Trailer Co. v. United States, supra* at 154, 76 S.Ct. 219. The damages sought here—the amount of the bribes—are not excessive or unreasonable in view of the damages presumed to have resulted from the bribery, and they certainly are no less remedial than is an award in the amount of $2,000 plus double damages. Because the cause of action and the remedy are civil, the Government's use of them is not precluded by Sirote's prior criminal convictions; one act may give rise to both civil and criminal liability. *United States ex rel. Marcus v. Hess, supra* at 549, 63 S.Ct. 379; *United States v. Johnson,* 284 F.Supp. 273, 278 (W.D. Mo.1968), *aff'd,* 410 F.2d 38 (8th Cir.),

*cert. denied,* 396 U.S. 822, 90 S.Ct. 63, 24 L.Ed.2d 72 (1969).

 Similarly, the existence of extensive legislation governing bribery and fraud penalties does not rule out the Government's maintenance of a civil action based on a common law right. The Supreme Court and lower federal courts have granted common law (civil) remedies in numerous cases in which statutory remedies, sometimes elaborate networks of civil and criminal remedies, were available. *See United States v. Acme Process Equip. Co.,* 385 U.S. 138, 145, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966); *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 563, 81 S.Ct. 294, 5 L.Ed.2d 820 (1961); *United States v. Borin,* 209 F.2d 145, 148 (5th Cir.), *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954); *United States v. Silliman,* 167 F.2d 607, 611 (3d Cir.), *cert. denied,* 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948); *Pooler v. United States,* 127 F. 519 (1st Cir. 1904); *Brown v. United States,* Ct.Cl., 524 F.2d 693, 700 (1975). These courts have told us that a statutory remedy is not exclusive, and common law rights and remedies survive, unless Congress intended the legislative provision to be exclusive.[7] The mere existence of statutes establishing bribery and fraud penalties (and other sanctions) detracts in no way from the Government's right to a civil remedy of the kind available to private employers. Rather, the passage of legislation enlarging the government's arsenal of remedies strengthens the Government's case, because it establishes a statutory standard of conduct and evidences a strong policy against actions like those taken by Sirote. Our imposition of liability will implement that policy. *Cf. United States v. Mississippi Valley Generating Co., supra* 364 U.S. at 548–51, 563, 81 S.Ct. 294; *United. States v. Acme Process Equip. Co., supra* 385 U.S. at 143, 146, 87 S.Ct. 350.

---

7. Where Congress creates a right that did not exist at common law, the statutory remedy may be exclusive, in the absence of a common law right or remedy that could survive. *Pooler v. United States,* 127 F. 519, 520 (1st Cir. 1904).

We hold, therefore, that the bribery for which plaintiffs are responsible was a wrong against the defendant for which the plaintiffs are liable in damages in the amount of the bribes paid. The first counterclaim is valid and plaintiffs' motion to dismiss it is denied. Defendant's cross-motion for partial summary judgment is granted to the extent that the plaintiffs are held liable for the bribes, gratuities and secret emoluments paid by or on behalf of plaintiffs to federal employees.[8] The amount of defendant's recovery will be determined under Rule 131(c).[9]

8. We leave entirely open any question relating to the effect of limitations on the Government's counterclaim (*see* 28 U.S.C. § 2415). No such issue has been raised before us.

