REVISED September 5, 2007

**United States Court of Appeals**
**Fifth Circuit**

IN THE UNITED STATES COURT OF APPEALS

**F I L E D**

FOR THE FIFTH CIRCUIT

**June 15, 2007**

_____

No. 06-30641

Charles R. Fulbruge III
Clerk

_____

STATE OF LOUISIANA,

Plaintiff-Appellant,

versus

ROBERT GUIDRY,

Defendant-Appellee.

-----------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
-----------------------

Before KING, WIENER, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant State of Louisiana (the "State") sued Defendant-Appellee Robert Guidry in Louisiana state court, alleging (1) tortious acquisition of a riverboat license, (2) conspiracy to breach a fiduciary duty, and (3) breach of fiduciary duty. All those claims arose from Guidry's participation in an extortion/bribery scheme involving former Louisiana Governor Edwin Edwards. After the state court denied Guidry's motion to dismiss the State's action, he filed a third-party complaint against the United States, seeking to enforce the terms of a cooperation

agreement that he had entered into with federal prosecutors which purported to limit Guidry's total financial obligation for his criminal wrongdoing. The United States removed the case to the district court, and Guidry again filed a motion to dismiss, which was converted to a motion for summary judgment. The district court granted Guidry's summary judgment motion, and the State now appeals. We affirm.

## I. FACTS & PROCEEDINGS

### A. The Extortion Scheme

Having been awarded a Certificate of Preliminary Approval for a riverboat gaming license in June 1993, Robert Guidry met with Andrew Martin, an aide to then-Louisiana governor Edwin Edwards, to lobby for assistance in completing the next step in the approval process, a suitability review before the Riverboat Gaming Division of the Louisiana State Police. Martin demanded that, for Guidry to even receive a suitability hearing, he must pay $100,000 monthly (the "extortion payments") to Martin, Edwin Edwards, and Stephen Edwards. Guidry agreed and received a suitability hearing and a gaming license about a year later. After Governor Edwards left office in 1996, Guidry began making the extortion payments.

### B. The Various State and Federal Investigations

Sometime in 1993, Doug Moreau, the District Attorney of East Baton Rouge Parish, had begun to investigate the way that

2

particular riverboat gaming licenses had been awarded. At about the time in May 1994 that he was awarded his license, Guidry was called to testify before a state grand jury that Moreau had assembled; Guidry denied any wrongdoing. In December 1996, federal investigators, who were also probing the awarding of riverboat licenses, learned of the extortion scheme involving Guidry from wiretapped conversations of Edwin Edwards. In June 1997, Guidry appeared before a federal grand jury and invoked his Fifth Amendment right against self-incrimination. The following month, the U.S. Attorney requested and received from Moreau transcripts of the state grand jury proceedings. Shortly thereafter, the chairman of the Louisiana Gaming Control Board[1] met with an Assistant U.S. Attorney, who laid out the government's evidence of the extortion scheme. Despite this evidence, the Gaming Board did not revoke Guidry's license, instead approving his October 1997 sale of that license for approximately $170 million.

## C. The Immunity Agreement

After receiving a "target letter" from the government and again being called before a federal grand jury, Guidry decided to negotiate a plea agreement with federal prosecutors. Before

---

[1] In May of 1996, the Louisiana Gaming Control Board replaced the Riverboat Gaming Commission as the regulatory agency overseeing riverboat gaming.

3

reaching a deal, however, Guidry sought full immunity from state prosecution. The State, through Moreau, agreed to defer to the federal government and grant Guidry full state immunity. Guidry successfully negotiated a plea agreement under which he pleaded guilty in federal court to one count of conspiracy to commit extortion in violation of 18 U.S.C. §§ 371 and 1951 and agreed to pay $3.5 million in fines, restitution, and forfeiture. Guidry also agreed to cooperate fully in the federal prosecution of his alleged co-conspirators. In exchange for his cooperation, federal prosecutors agreed not to pursue any other charges or forfeiture actions against Guidry.

**D. The State's Civil Action**

In June 1999, Guidry was subpoenaed by the Louisiana Attorney General to testify in an administrative hearing related to the renewal of the riverboat gaming license that Guidry had sold in October 1997. Believing his testimony to be required by his immunity agreement, which provided that he would "at all times in the future cooperate in any state investigations or prosecutions in related matters, and at all times provide truthful information and testimony," Guidry testified at the administrative hearing as to the circumstances surrounding his procurement of the original riverboat gaming license. Several months later, the State initiated the instant action against Guidry in Louisiana state

4

court, alleging Guidry's (1) tortious acquisition of a riverboat license, (2) conspiracy, with Edwards and Martin, to breach their fiduciary duties, and (3) breach of the fiduciary duty he owed to the State as the holder of a riverboat gaming license. At the request of federal prosecutors, the district court stayed the state-court proceedings pending the resolution of the criminal prosecution of the Edwardses and Martin.

**E.    Guidry Testifies, Receives Sentence; State Denied Criminal Restitution**

In accordance with his plea agreement, Guidry testified at the federal trial of his co-conspirators for six days in January and February 2000. The following January, Guidry was sentenced to three years probation, five-months of which were to be served in a "halfway house," and ordered to pay a total of $3.5 million in fines, restitutions, and forfeitures. At the federal sentencing hearing, the State sought, but was denied, restitution under the federal victim restitution law.[2] The district court ruled that (1) restitution for property loss was not appropriate, because the State of Louisiana did not part with "property" when it issued Guidry's riverboat gaming license,[3] and (2) restitution for any loss suffered from Guidry's conspiracy to breach fiduciary duty

---

[2] 18 U.S.C. § 3663.

[3] The court relied on Cleveland v. United States, 531 U.S. 12, (2000).

5

(his own and that of state officials) was not appropriate, because the harm alleged by the State was not the kind of direct harm that warrants compensation under criminal restitution statutes.

**F.  The District Court Proceedings**

The federal stay of the state-court proceedings automatically expired at the conclusion of the federal criminal proceedings, and the instant case resumed.  Guidry first raised peremptory exceptions of no cause of action and  no right of action, contending that the State suffered no compensable damages.  In denying Guidry's exceptions, the state court (1) adopted the rationale of <u>Continental Mgmt, Inc. v. United States</u>,[4] which recognized that a civil tort exists for bribery of a public official resulting in loss of loyal service of a government official, and (2) held that <u>Plaquemines Parish Commn. Council v. Delta Dev. Co.</u>[5] supported the State's claim that Guidry assumed a fiduciary duty to the State when he accepted his riverboat gaming license.

Guidry applied for supervisory review in the Louisiana First Circuit Court of Appeal.  The court of appeal denied the writ, stating simply that "[w]e find no error in the trial court's denial of the exceptions of no cause of action and no right of action."

---

[4] 527 F.2d 613 (Ct. Cl. 1975).

[5] 502 So.2d 1034, 1040 (La. 1987).

Guidry then applied to the Louisiana Supreme Court for supervisory writs, which the court denied without comment.

Guidry returned to the state trial court in which he filed an answer and reconventional demand, seeking a preliminary injunction to bar the State from pursuing the instant case. He based this demand on his immunized testimony from the federal criminal proceedings. The state court denied Guidry's request for a preliminary injunction, ruling that District Attorney Moreau never intended Guidry's immunity agreement to extend to civil claims that the State may have against him. Guidry again appealed to the Louisiana First Circuit Court of Appeal; but while that appeal was pending, Guidry filed a third-party demand against the United States, grounded in his reliance on assurances made by state and federal prosecutors that the aggregate $3.5 million in fines, penalties, and restitution would be the maximum financial sanction imposed on him as the result of his wrongdoing. The United States removed the entire action to federal court before Guidry's state-court appeal was resolved.

After removal, Guidry filed a motion to dismiss, which was converted, by sua sponte order of the court, to a motion for summary judgment. In his motion, Guidry argued, inter alia, that the State's allegations of (1) tortious acquisition of a riverboat gaming license, (2) civil conspiracy to breach fiduciary duty, and

7

(3) breach of fiduciary duty, did not establish any legitimate cause of action under Louisiana law. The district court granted Guidry's motion on this issue,[6] and the State initiated the instant appeal.

## II. ANALYSIS

### A. Preliminary Issues

#### 1. Erie Doctrine

The State first contends that the district court, in granting Guidry's summary judgment motion, "disregarded Louisiana's substantive law" in contravention of the Erie doctrine. The State does not contend that the district court applied the wrong law (e.g., federal), but rather that it misinterpreted Louisiana law or made an improper "Erie guess." As the district court's grant of summary judgment is subject to our de novo review, we shall address whether the district court incorrectly interpreted or predicted Louisiana law when we review each of the bases for the court's ruling. Accordingly, we need not treat the district court's

---

[6] Guidry also argued that (1) the immunity granted to him barred the use of his immunized testimony in a civil matter, (2) collateral estoppel barred the state's claims, (3) the Noerr-Pennington doctrine barred the State's claims, and (4) the State's claims were prescribed. The district court did not address any of these issues; and even though Guidry urges us to consider them as alternative bases for affirmance, neither party has briefed them sufficiently to allow us to do so.

8

alleged failure to comply with the <u>Erie</u> doctrine as a separate issue on appeal.

## 2. Law-of-the-Case Doctrine

The State also contends that the district court violated the law-of-the-case doctrine by dismissing the State's suit in direct contravention of the earlier state-court ruling that denied Guidry's peremptory exceptions of no cause of action and no right of action. The State points out that, not only did the state trial court deny Guidry's exceptions, but the Louisiana court of appeal "found no error in the trial court's denial" that would warrant supervisory review. The State insists that, under the law-of-the-case doctrine, this "prior ruling" may be reexamined only if "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice."[7]

Guidry responds that the state-court rulings in this case are not entitled to control under the law-of-the-case doctrine, which provides only that "an issue of law or fact <u>decided on appeal</u> may not be reexamined either by the district court <u>on remand</u> or by the

---

[7] <u>Fuhrman v. Dretke</u>, 442 F.3d 893, 897 (5th Cir. 2006).

appellate court <u>on a subsequent appeal</u>."[8]  He notes correctly that, under Louisiana law, "[a] denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question <u>when appeal is taken</u> from final judgment."[9]  Consequently, Guidry insists, denial of supervisory review is not a "decision on appeal" and thus not entitled to law-of-the-case status.  We agree.

Louisiana law makes clear that an appellate court's refusal to grant a supervisory writ is not a "decision on appeal."[10] Similarly, a trial court's denial of a peremptory exception is an interlocutory judgment, subject to reconsideration by that court.[11] "[I]nterlocutory state court orders are transformed by operation of

---

[8]  <u>United States v. Becerra</u>, 155 F.3d 740, 752 (5th Cir. 1998) (citations omitted) (emphasis added).

[9] <u>Goodwin v. Goodwin</u>, 607 So. 2d 8, 10 (La. App. 2 Cir. 1992) (quoting <u>State v. Fontenot</u>, 55 So. 2d 179 (La. 1989) (emphasis added).

[10] <u>See</u> <u>Id.</u>

[11] <u>See</u> <u>Bennett v. Arkansas Blue Cross Blue Shield</u>, 943 So. 2d 1124, 1126 (La. Ct. App. 1 Cir. 2006); <u>VaSalle v. Wal-Mart Stores, Inc</u>. 801 So.2d 331, 334-35 (La. 2001) ("[I]nterlocutory orders overruling ... peremptory exceptions cannot be binding upon the trial court when it timely--but later--determines error of judgment based upon the matter as submitted or upon subsequent disclosures in the record which require a contrary holding."); <u>see</u> <u>also</u> 1 <u>Louisiana Civil Law Treatise-Civil Procedure</u>, § 6.7 (4th ed. 2002).

28 U.S.C. § 1450 into orders of the federal district court to which the action is removed."[12] The district court here was "free to treat the order [overruling Guidry's peremptory exceptions] as it would any such interlocutory order it might itself have entered."[13] As "a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions,"[14] the court was free to consider Guidry's motion for summary judgment, even though that motion encompassed many of the arguments rejected by the state trial court in its judgment overruling Guidry's peremptory exceptions.

For its part, the district court concluded that the state-court ruling was "simply not controlling at the summary judgment stage" and determined that, even if it were considered the law of the case, it was nevertheless subject to reconsideration, because

---

[12] Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1304 (5th Cir. 1988) ("[T]he state court's ruling is purely interlocutory, [and] it remains subject to reconsideration just as it had been prior to removal.").

[13] Id.

[14] United States v. Palmer, 122 F.3d 215, 220 (5th Cir. 1997); see also Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990) (holding that trial court is free to reconsider and reverse its decision on an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law"), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1076 (5th Cir. 1994).

it was clearly erroneous such that adherence to it "would work a manifest injustice . . . under the facts at hand."[15]  The district court cited, as reasons for this conclusion, the state trial court's (1) failure to cite Louisiana jurisprudence applicable to the facts of this case, and (2) reliance on a case from the Court of Claims applying a common-law doctrine, which in Louisiana is only persuasive authority at best.

We need not address whether the district court was correct on that issue, however, because we are satisfied that the law-of-the-case doctrine does not apply to the state-court ruling in this case: Neither the trial court's initial overruling of Guidry's peremptory exceptions nor the court of appeal's denial of supervisory review amounted to a "decision on appeal" that is presumptively exempt from reexamination under the law-of-the-case doctrine.[16]

## B.  Tortious Acquisition of a Riverboat Gaming License

The State next contends that Guidry's wrongful conduct in acquiring his riverboat gaming license renders him liable to the

---

[15] See Fuhrman, 442 F.3d at 897 (recognizing the exceptions to the law-of-the-case doctrine).

[16] We are not here presented with a situation in which a federal court with removal jurisdiction encounters a Louisiana appellate court decision that would be considered a decision on appeal thus requiring us to decide whether it is entitled to law-of-the-case status in subsequent federal court proceedings. We express no opinion on such a situation.

12

State for any profit or economic advantage he derived from that license. To validate this contention, we would have to conclude that either (1) Guidry's criminal violation ipso facto creates a civil cause of action for the State against him, or (2) Louisiana law makes bribery of a public official actionable in tort. We cannot credit either proposition.

## 1. Criminal Violation as Basis for Civil Action

In denying Guidry's exception of no cause of action, the state trial court stated that "it is clear that a violation of a criminal statute may provide the basis for tort liability." In opposition, however, when the district court granted Guidry's summary judgment motion, it recognized that "criminal statutes may serve as guidelines for the imposition of civil tort liabilities," but noted that "Louisiana courts use this practice sparingly when criminal statutes such as forgery, conversion, or traffic violations are involved." On appeal, the State mischaracterizes the district court's ruling on this point as a determination that "the violation of a criminal statute cannot form the basis of a civil claim against Guidry." In truth, the district court, at most, determined that (1) violation of a criminal statute does not automatically

13

create a civil cause of action, and (2) Guidry's conduct did not create a cause of action for the State in this case.[17]  We agree.

The district court's legal analysis on this point is correct. Under Louisiana law, criminal statutes may provide the standard of care in a tort action when the other fundamental elements of a tort (duty of care, damages) are present.  Alone, however, a criminal violation will not create tort liability.[18]

**2.  Bribery as Tort**

**a.  The State-Court Ruling and Continental**

In recognizing the State's claim for tortious acquisition of a gaming license, the state trial court explicitly adopted the rationale of Continental Mgmt., Inc. v. United States,[19] in which the Court of Claims ruled that bribery of a public official may create an action in tort.  In Continental, a group of mortgage bankers sued the United States for sums allegedly due under contracts of mortgage insurance issued by the Federal Housing

---

[17] The district court also observed that Guidry pleaded guilty only to one count of violating the Hobbs Act, and was not convicted of a bribery violation.

[18] Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 793 (La. 1992) ("Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability."); Pierre v. Allstate Ins. Co., 242 So.2d 821, 829-30 (La. 1971) (same).

[19] 527 F.2d 613 (Ct. Cl. 1975).

14

Administration.[20] The government countersued for an amount equal to the sum of the bribes paid to FHA and Veterans Administration employees by a former president of the plaintiffs' predecessor corporation.[21]

The issue faced by the court in Continental was whether criminal acts give rise to liability to the government when the government cannot prove direct or specific monetary injury.[22] The bankers argued, as Guidry does here, that the government must prove that some damage resulted from the bribery, and that the government's failure to allege provable, measurable damages warranted dismissal of its counterclaim.[23] The government countered that interference with the principal-agent relationship between it and its employees was a compensable wrong per se, and that the government need prove no other injury.[24]

The Court of Claims began its analysis by stating the general proposition that "a third party's inducement of or knowing participation in a breach of duty by an agent is a wrong against

---

[20] 527 F.2d at 614.

[21] Id. The company president and four FHA employees had pleaded guilty to bribery charges.

[22] Id.

[23] Id.

[24] Id.

15

the principal which may subject the third party to liability."[25] It acknowledged, however, that all of the cases it cited for this proposition were "technically distinguishable" from the one before it, because the "monetary consequences of the agents' nefarious dealings" in those cases was "clearer or more specific."[26] Nevertheless, the <u>Continental</u> court found that those cases' "reasoning suggests that all who knowingly participate in a scheme by which an agent obtains secret profits should be held liable to the principal."[27] The court also ventured that "[a] sister line of decisions indicates that the violation of a statutory standard of conduct should normally meet with civil sanctions designed to effectuate the purpose of the statute infringed."[28] The court reasoned that "[t]he purpose of the bribery statute-the protection of the public from the corruption of public servants and the evil consequences of that corruption-will obviously be furthered by the recognition of a civil remedy."[29]

The <u>Continental</u> court then addressed the proof-of-damages issue. For several reasons, it accepted the government's position

---

[25] <u>Id.</u> at 616-17 (citations omitted).

[26] <u>Id.</u> at 617.

[27] <u>Id.</u>

[28] <u>Id.</u> (citations omitted).

[29] <u>Id.</u>

16

that "it is enough to show the fact and amount of the bribes —
nothing further need be alleged or proved by way of specific or
direct injury."[30]  First, it pointed out that "the briber deprives
the Government of the loyalty of its employees, upon which the
Government and the public must rely for the impartial and rigorous
enforcement of government programs."[31]  Next, the court recognized
that "[b]ribery of officials can also cause a diminution in the
public's confidence in the Government, upon which the Government
must also rely."[32]  Finally, the court noted, "[t]he Government
likewise incurs the administrative costs of firing and replacing
the venal employees and the costs of investigation, all of which
are compensable in fraud cases."[33]

The court then recited the "old maxim of the law that, where
the fact of injury is adequately shown, the court should not cavil
at the absence of specific or detailed proof of the damages."[34]  The
court concluded that even though "[s]ignificant elements of []
harm, such as the injury to the impartial administration of
governmental programs, are not susceptible to an accurate monetary

_____

[30] Id. at 618.

[31] Id.

[32] Id.

[33] Id.

[34] Id. at 619.

17

gauge," it would not deny the government relief simply because its injury was "not readily traceable or measurable."[35] In the end, the court held that "the amount of the bribe provides a reasonable measure of damage, in the absence of a more precise yardstick."

The State's argument in this case is largely the same as that made by the government in Continental. The State contends that (1) Guidry owed a duty to the State not to improperly obtain a riverboat gaming license, and (2) in breaching that duty, he caused the State to lose the gaming license itself, the loyal service of its Governor and his assistant, and the honest and impartial administration of its government. Moreover, the State insists that, despite the difficulty of determining the quantum of its damages, it is entitled to recover general damages for its loss.

### b.  Damages

In its summary judgment analysis of the State's tortious acquisition claim, the district court focused on whether the State suffered compensable damages from Guidry's wrongdoing. The court did not address whether Guidry owed a general duty of care to the State or, if so, whether he breached that duty.[36] As the parties have not asked us to decide that issue on appeal, we address only

---

[35] Id.

[36] The court separately considered, as will we, the State's claim that Guidry breach a fiduciary duty to the state.

18

whether the State suffered damages compensable through a tort action.

### i.   The Gaming License

In its ruling, the district court first clarified that a riverboat gaming license is not "property," the loss of which could provide the basis for a tort action.  The court cited § 27.42(B) of the Louisiana Riverboat Economic Development And Gaming Control Act, which sets forth the public policy regarding riverboat gaming:

> Any license, permit, approval, or thing obtained or issued pursuant to the provisions of this Chapter is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitutions of the United States or of the state of Louisiana.[37]

The court reasoned that "because the State could not have been deprived of any property interest from the issuance of [Guidry's license], it may not claim damages equivalent to the value of the license."

The court found further support for this conclusion in Cleveland v. United States,[38] in which the Supreme Court unanimously held that a regulator who issues a Louisiana video poker license does not part with "property" for purposes of prosecuting a

---

[37] La. Rev. Stat. Ann. § 27.42(B) (emphasis added).

[38] 531 U.S. 12 (2000).

licensee under the federal mail fraud statute.[39]  The Court in Cleveland held that "whatever interests Louisiana might be said to have in its video poker licenses, the State's core concern is regulatory," then distinguished each of Louisiana's interests in its poker licenses from true "property" interests.[40]

The district court determined that the regulatory system established by the Louisiana legislature provides an alternative civil remedy for an improper acquisition of a gaming license — revocation of that license.  It also noted that, in this case, the State elected not to avail itself of that remedy after discovering Guidry's unlawful conduct, opting instead to approve Guidry's sale of his riverboat license to a third party.  The court reasoned that the State, having eschewed the legislatively-created remedy of revoking improperly acquired licenses, should not now be allowed "to create a new means of seeking retribution" for that conduct.

The State insists that the district court's reliance on Cleveland was misplaced, as Cleveland's holding applies only to federal mail fraud cases and "has no bearing on a civil action for damages."  It contends that Guidry's alleged tort is analogous to (1) unauthorized possession of movable property (civil law conversion), (2) the common law tort of conversion, or (3) the

---

[39] Id. at 20-26.

[40] Id.

20

unauthorized use of a franchise. Finally, the State asserts that whether the riverboat gaming license is "property" or a "privilege" is not important, because the nature of the right associated with the license "does not diminish the nature of the damage sustained by the State as a result of Guidry's tortious conduct," and "a loss of property is not essential to recovery in tort."

The State's first three contentions are unavailing. As noted earlier, Louisiana law is clear that awarding a riverboat gaming license does not confer on the licensee a property right of any kind. Awarding such a license may create tangible economic benefits for both the State and the licensee, but, in making the award to Guidry, the State did not transfer any "property" interest to him, such that it may demand that Guidry return the value of that interest as part of a tort recovery. Consequently, the State's attempts to analogize its claim to one for unauthorized possession of movable property, common law conversion, or the unauthorized use of a franchise, are fruitless. As the cases cited by the State illustrate, all of those claims involve interference with discreet, determinable property rights.[41]

Furthermore, the State's contention that the common law tort of conversion "has been inferred" from article 2315 of the

---

[41] See, e.g., Dual Drilling Co. v. Mills Equip. Inv., Inc., 721 So. 2d 853 (La. 1998) (involving unauthorized possession of an oil rig).

21

Louisiana Civil Code is simply incorrect.  In <u>Dual Drilling</u>, the case that the State cites for this proposition, the court indisputably held otherwise:

> Despite the use of this common law term, such actions are not to be confused with the civil law tort of conversion. In common law jurisdictions, conversion is an intentional wrong giving rise to strict liability in an action for the recovery of the value of a chattel
> . . . .
> "and the absolute liability which characterizes [common law] conversion is in direct conflict with Article 2315 of the Louisiana Civil Code and the principle that liability for wrongful dispossession rests on fault."[42]

Finally, the State cites no authority for its contention that its tortious-acquisition claim resembles that of a franchisee or licensee for unauthorized use of intellectual property.  By its very nature, such a claim must involve a "property" interest held by the plaintiff, and Louisiana law provides unequivocally that the State neither has nor transfers a property interest in a riverboat gaming license.  The same "un-property" analysis used by the Supreme Court in <u>Cleveland</u> for a video poker license fits that purpose for riverboat gaming license.  The distinction in the crime framework of the cases is immaterial.

### ii.  General Damages

---

[42] 721 So. 2d at 857 n.3 (quoting A.N. Yiannopoulos, <u>Louisiana Civil Law Treatise</u> §§ 357, 359 at 690-92, 695).

22

The State next contends that it is entitled to recover general damages for its loss resulting from Guidry's participation in a bribery scheme confected by then-Louisiana Governor Edwards. It is axiomatic that "property" rights are not a prerequisite to tort recovery. Louisiana courts routinely award "general damages" for losses such as pain and suffering or inconvenience that are "inherently speculative in nature and cannot be fixed with mathematical certainty."[43] In this case, the State alleges that it suffered the loss of (1) reputation, and (2) honest and loyal service of its employees, for which it has the right to recover. To support this proposition, the State again cites Continental and analogizes its claim to one for general damages resulting from libel or defamation.

The district court did not directly address the viability of the State's claim for general damages. Nonetheless, we presume that the district court found those damages insufficient to support a tort claim. The court did address the Continental case, however, and concluded that it was "clearly not binding authority" because the common law doctrine on which it relies is, at most, persuasive authority for a court applying Louisiana law. The district court's observation is plainly accurate. Louisiana tort law is primarily

---

[43] Wainwright v. Fontenot, 774 So.2d 70, 74 (La. 2000).

23

based in the Louisiana Civil Code and is informed by the relevant interpretations thereof by courts of competent jurisdiction. Courts applying Louisiana law may regard decisions based on the common law as persuasive, but not as binding authority. Consequently, the district court was in no way bound to follow the reasoning of the <u>Continental</u> case.

The district court also observed that, unlike the <u>Continental</u> case, in which the Court of Claims justified imposing civil remedies as a way to further the goals of the federal bribery statute, Louisiana already has an alternative civil remedy for the improper acquisition of a riverboat gaming license (through bribery or otherwise) — revocation of the license. This observation is compelling. If the State had elected to revoke Guidry's gaming license after learning of his misconduct, he would not have been able to sell it for $170 million. That remedy, then, would have had the same effect on Guidry as the State now seeks in tort, forfeiture of his ill-gotten gains. The record provides little insight into the State's reasons for having foregone the remedy of revocation, but none disputes that the appropriate state regulatory agency knew of Guidry's illicit conduct prior to his sale of his license. The district court was correct, then, to rebuff the State's attempt to justify a novel tort action on the grounds that allowing a civil remedy would bolster the criminal bribery statute,

24

when Louisiana already had established an alternative civil remedy that would serve the same purpose in situations like the one presented here.

For his part, Guidry attacks the State's general damages claim by noting that no court applying Louisiana law has ever awarded tort damages for bribery of a public official. Such a claim, he argues, is easily distinguishable from defamation, which has long been recognized as involving compensable harm, despite the difficulty in calculating the value of that harm.

As to Guidry's first point, the State does not dispute that no court applying Louisiana law has ever awarded the government general damages for loss of reputation or loyal services resulting from the bribery of a public official. The State cites only the Continental case and two district court decisions in support of its proposition that such a tort remedy exists. It provides no Louisiana cases, pointing instead to the Louisiana Supreme Court's observation that public bribery constitutes "wrong done to the people by the corruption in public service,"[44] as evidence that recognizing a civil remedy would further the goal of the criminal bribery laws. Regarding its suggestion of an analogy to defamation claims, the State does not compare the nature of the offense at issue here (bribery, fraudulent license acquisition) with

_____

[44] State v. Bloomenstiel, 106 So. 2d 288, 290 (La. 1958).

25

defamation; it simply states that awarding general damages here would be no different than awarding a defamation plaintiff general damages.

### iii. Conclusion

For the following reasons, we agree with the district court that Guidry's conduct in acquiring his riverboat gaming license does not render him liable to the State in tort for any profit or economic advantage he derived from that license. First, bribery is a crime, and as a crime it subjects the briber to a range of penalties, including restitution to the victim. As detailed earlier, Guidry has already been punished for his crime, and the State did not qualify as a victim of Guidry's criminal conduct deserving of restitution.

Second, despite the State's contentions to the contrary, Louisiana courts do not generally equate criminal violations with compensable tortious conduct. Only in rare instances do Louisiana courts even treat a criminal violation as clear evidence of a breach of the applicable civil standard of care.

Third, the losses that the State alleges it suffered are more than "difficult to calculate"; they are so attenuated and speculative that they cannot form the basis of a tort action. Unlike in defamation cases, which involve direct attacks by one party on the good name of another, any loss of reputation in this

case was a by-product of a crime motivated by the greed of its participants. Even though bribery of a public official undoubtedly will, if discovered, affect a state's reputation, the same is true of all crimes, to some greater or lesser degree. As Guidry notes, such loss of reputation is one of the multifarious elements of the "societal harm" that a state's criminal laws are designed to redress, but only rarely will such loss provide the basis for a tort claim. Guidry's case does not present one of those rare instances.

Furthermore, the State's claim for loss of the "loyal service" of its employees is dubious at best. The State's entitlement to the services of its employees arises from its contract with those employees. As Guidry observes, Louisiana has already rejected the notion that the State "owns" the services of its employees:

> The parish and the state cannot own the services of their employees. It has been held that ownership of services is not conveyed by a contract with the party to whom they are rendered because the knowledge or skill which a man possesses is not subject to ownership. Gonsalves v. Hodgson, 38 Cal.2d 91, 237 P.2d 656 (1951). Human effort and work are not the subject of ownership. If anyone owns them it is the employees themselves . . . .[45]

As such, we cannot conceive how the State could recover general tort damages for the loss of the loyal service of its employees.

---

[45] State v. Gisclair, 382 So.2d 914, 916 (La. 1980) (construing whether services of employees were "movables" within meaning of unauthorized use of movables statute).

27

Finally, as noted earlier, Louisiana has chosen its civil remedy to address improper acquisition of a riverboat gaming license — revocation. Had the State revoked Guidry's license when it first learned of his conduct, it would have achieved largely the same results it seeks now, i.e., preventing Guidry from profiting from his criminal activity and furthering the purpose of the criminal bribery statute. Of course, only tort recovery would allow the State to keep for itself the ill-gotten gains generated by Guidry's sale of the license.

For the foregoing reasons, we affirm the district court's grant of summary judgment on the State's claim against Guidry for tortious acquisition of a riverboat gaming license.

## C.   Fiduciary Duty Claims

### 1.   Conspiracy

The State next contends that Guidry is liable for conspiring in the breach of the fiduciary duties owed to the State by then-Governor Edwards and his assistant, Andrew Martin. The State bases this contention on Article 2324 of the Louisiana Civil Code, which states, in pertinent part:

> He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

Prior to its amendment in 1987, this article read:

28

> He who cause another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.

When that version of Article 2324 was in effect, courts interpreted "unlawful act" to mean "tortious conduct" and applied the article only to conspiracies based on an underlying tort.[46] An action against a fiduciary may involve his failure to meet some general standard of care (negligence) and therefore sound in tort. In contrast, an action for breach of a fiduciary duty arises from the special relationship between the fiduciary and the one who claims the duty [or "principal"], which therefore arises in contract (or quasi-contract).[47] As such, a breach of a fiduciary

---

[46] See Roussel Pump & Elec. Co. v. Sanderson, 216 So.2d 650 (La. Ct. App. 4 Cir. 1969) ("A breach of this [fiduciary] obligation may be cause for legal redress against the offending officer in a proper action ex contractu, but it is not an 'unlawful' act within the contemplation of LSA-C.C. art. 2324."); see also Hartman v. Greene, 190 So. 390, 391 (La. 1939)("The term 'an unlawful act' does not mean necessarily a criminal act; it means a wrongful act, or a tort-any wrongful act (not involving a breach of contract) for which a civil action will lie.").

[47] See de la Vergne v. de la Vergne, 745 So. 2d 1271, 1275 (La. Ct. App. 4 Cir. 1999)("[C]ourts must consider the underlying claim to determine if the action is indeed one for breach of a fiduciary duty which is governed by the 10 year prescriptive period [for contract actions] or merely a suit against a fiduciary for negligence which is governed by the one year prescriptive period.").

duty would not provide a basis for conspiratorial liability under the previous version of article 2324.[48]

The State concedes both that (1) a breach of fiduciary duty arises in contract, and (2) the pre-revision version of article 2324 recognized conspiratorial liability only for those who participate in or induce tortious acts. The State insists, however, that, by replacing "unlawful act" with "intentional and willful act," the Louisiana legislature broadened the applicability of article 2324 beyond actions based in tort. The district court concluded that, even post-revision, a conspiracy claim under article 2324 will only lie if the underlying act is tortious (and not contractual or quasi-contractual) in nature.

For its part, the State relies primarily on decisions from common-law jurisdictions recognizing that one who conspires with a fiduciary in a breach of the fiduciary's duty is liable to the principal.[49] In the State's view on appeal, the 1987 revision to Civil Code article 2324 brings Louisiana law into consonance with the laws of other jurisdictions in the United States. The State does cite Guidry v. Bank of LaPlace,[50] and C & B Sales and Servs.

---

[48] See Roussel, 216 So.2d at 655.

[49] Citations omitted.

[50] 661 So. 2d 1052 (La. Ct. App. 4 Cir. 1995).

v. McDonald,[51] both cases decided under Louisiana law in which the plaintiff asserted an article 2324 conspiracy claim based on breach of fiduciary duty. In the State's view, these cases stand for the proposition that one who conspires with a fiduciary to breach a fiduciary duty is liable in solido with the fiduciary to his principal.

In its summary judgment ruling, the district court first observed that courts have continued to interpret revised article 2324 as applying only to conspiracies involving an underlying tort.[52] The court also noted that we have recognized that, even though "the 1987 amendments changed the language of La. Civ. Code art. 2324(A), the pre-amendment conspiracies still provide guidance as to the applicable law in regards to conspiracies."[53] Therefore, reasoned the district court, article 2324 continues to apply only to alleged conspiracies in which the unlawful act is tortious conduct. The district court also cited two post-revision cases from the Eastern District of Louisiana recognizing that article 2324 conspiracy claims still must involve an underlying tort.[54]

---

[51] 95 F.3d 1308, 1316 (5th Cir. 1996).

[52] See infra notes 53-54.

[53] See C & B Sales, 95 F.3d at 1316; Chrysler Credit Corp. v. Whitney Nat. Bank, 51 F.3d 553, 557 (5th Cir. 1995).

[54] See Jefferson v. Lead Industries Ass'n, Inc., 930 F.Supp. 241, 247-248 (E.D. La. 1996) ("Louisiana law does not recognize

The district court challenged the State's reliance on Guidry as well. It concluded that the Guidry court did not recognize an action under article 2324 for conspiracy to breach a fiduciary duty, but simply adopted the reasoning from Nat'l Union Fire Ins. Co. that the 1987 amendments merely rephrased the article "in terms of conspiracy, conformable with the jurisprudence."[55]

Finally, the district court addressed the common-law authorities cited by the State. Acknowledging that those authorities may lend support to the State's argument that a cause of action for conspiracy to breach a fiduciary duty may be treated as a tort, the court reiterated that common-law authority is only persuasive in Louisiana. The court quoted from two Louisiana Supreme Court decisions clarifying that "the proper analysis to determine [a] defendant's liability is to be found in Louisiana's substantive law as found in the Louisiana Civil Code"[56] and cautioning that "'due to underlying fundamental differences in conceptual technique and methodology, borrowing of common law rules

an independent cause of action for civil conspiracy . . . . The actionable element under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury."); Rhyce v. Martin, 173 F.Supp.2d 521, 535 (E.D. La 2001) (discussing the ruling in C & B Sales).

[55] See Guidry, 661 So. 2d at 1058 (quoting Nat'l Union Fire Ins. Co., 552 So. 2d at 634).

[56] Porteous v. St. Ann's Café and Deli, 713 So. 2d 454, 455 (La. 1998).

32

for the solution of problems arising under Louisiana law is both unnecessary and confusing.'"[57]  In adherence to these directives, the district court disregarded the common-law authority provided by the State and held that, because "under Louisiana law, a breach of fiduciary duty only arises in contract . . . [the State's] cause of action for conspiracy to breach a fiduciary duty lacks an essential element - an underlying intentional tort" and must fail.

The district court's reasoning is sound.  Even after the revision of article 2324, Louisiana courts continue to recognize that its application is limited to conspiracies involving tortious conduct.[58]  Additionally, the district court's observations about the necessity or propriety of adopting common-law tort principles into Louisiana law are also correct.  Despite many similarities to common law, Louisiana courts may not and should not facilely adhere to common-law authority as precedent.  Consequently, the district court was justified in limiting its guiding authority to Louisiana-court decisions interpreting the Civil Code.  We therefore affirm

---

[57] Dual Drilling Co. v. Mills Equip. Inv., Inc., 721 So. 2d 853, 857 n.3 (quoting A.N. Yiannopoulos, Louisiana Civil Law Treatise § 359, at 695).

[58] See, e.g., Thomas v. North 40 Land Development, Inc., 894 So. 2d 1160, 1174 (La. Ct. App. 4 Cir. 2005) ; Sullivan v. Wallace, 859 So.2d 245, 248 (La. Ct. App. 2 Cir. 2003); Aranyosi v. Delchamps, Inc., 739 So.2d 911, 917 (La. Ct. App. 1 Cir. 1999); Butz v. Lynch, 710 So. 2d 1171, 1174 (La. Ct. App. 1 Cir. 1998); Hall v. Lilly, 697 So. 2d 676, 678-79 (La. Ct. App. 2 Cir. 1997).

the district court's summary judgment dismissal of the State's cause of action for Guidry's conspiracy to breach the fiduciary duty of another, as "lack[ing] an essential element — an underlying tort."

### 2. Guidry's Alleged Fiduciary Duty

The State next contends that Guidry owed it a fiduciary duty by virtue of his holding a riverboat gaming license. The State bases this contention on its assertion that Louisiana law imposes "duties of good faith, honesty, candor, and confidence" on such licensees. These duties, the State insists, amount to a fiduciary duty in favor of the State. Guidry responds that the statutory duties imposed on riverboat gaming licensees are "hefty," but do not rise to the high level of a fiduciary duty, either singly or in combination. The district court agreed with Guidry, and so do we.

In trying to support its contention that the duty owed to it by Guidry as a riverboat gaming license holder is that of a fiduciary, the State references several provisions of the version of the Louisiana Riverboat Economic Development and Gaming Control Act that was in effect during the time Guidry held his riverboat gaming license. Specifically, the State notes that, under that version of the Gaming Control Act, (1) applicants for gaming licenses were screened for "good character, honesty, and

34

integrity,"[59] required to disclose those having a financial interest in the gaming license, and prohibited from making false statements in their applications;[60] and (2) license holders were required to report any violations of the Gaming Control Act.[61]  The State also quotes from <u>Capitol Houses Preservation Co. v. Perryman Consultants, Inc.</u>, in which an intermediate state appellate court observed that "the [Louisiana] legislature placed dual duties on the [riverboat gaming] applicants and licensees, first a duty to be honest and complete in the initial representations , and second, a continuing duty to disclose any dishonest or fraudulent misrepresentation."[62]  The State urges us to conclude that these obligations produce a fiduciary duty.

In addressing this issue, the district court recognized that the Louisiana legislature has imposed many obligations on gaming licensees and applicants.  It disagreed, however, with the State's contention that these obligations operate to create a fiduciary duty.  The court first stated that, according to the Louisiana Uniform Fiduciaries Law, a "fiduciary" includes the following:

---

[59] La. Rev. Stat. § 27:70(A)(1) (repealed 2001).

[60] La. Rev. Stat. § 27:99 (repealed 2001).

[61] La. Rev. Stat. § 27:70(C) (repealed 2001).

[62] 725 So. 2d 523, 528 n.8 (La. Ct. App. 1 Cir. 1998).

a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.[63]

Next, the court quoted the Louisiana Supreme Court's holding that "[o]ne is said to act in a 'fiduciary capacity' . . . when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another."[64] The court then observed:

Clearly, based on the Louisiana statutory authority, Guidry does not fall into one of the enumerated categories of fiduciary (i.e., Guidry was not a trustee, guardian, executor, etc.). Nor did Guidry act as the State's fiduciary, when conducting business transactions as a casino operator; the business transactions Guidry entered into were soley [sic] for his own benefit, they were not entered into on behalf of the State, and, as previously discussed, the business transactions did not involve a property right.

On appeal, the State insists that the district court's adoption of the definition of "fiduciary" set forth in the Louisiana Uniform Fiduciaries Law was improper. That law, asserts the State, deals exclusively with issues regarding the payment of money, the endorsement of negotiable instruments, and the deposit of funds, and is intended only to protect third parties, such as

---

[63] La. Rev. Stat. § 9:3801(2).

[64] State v. Hagerty, 205 So. 2d 369, 374 (La. 1968).

banks, that conduct transactions with "fiduciaries" as defined by the Uniform Fiduciaries Law. The State argues that "[w]hether a fiduciary relationship exists is most often a fact question that can be determined only after an evaluation of the evidence presented to the Court."[65] It submits that statutory authority is not a prerequisite to the imposition of a fiduciary duty under Louisiana law, adding that courts have found such duties established, absent a specific statutory provision, even when "detailed, comprehensive, statutes govern [an] area of law."[66]

The only case cited by the State in support of these contentions is Plaquemines Parish Comm'n Council v. Delta Dev. Co., in which the Louisiana Supreme Court held that a parish attorney owed a fiduciary duty to his statutory clients based on his position both as a public official and an attorney.[67] The State quotes one passage of that holding in which the court observes that "[t]he dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other." A later passage reveals a slightly different proposition: "A fiduciary relationship has been further described as one that exists 'when confidence is

---

[65] Id. at 50.

[66] Id. at 53.

[67] 502 So. 2d 1034, 1040-41 (La. 1987).

37

reposed on one side and <u>there is resulting superiority and influence on the other</u>.'"[68]

The State's argument on this point fails. <u>Delta Development</u> involved an entirely different type of relationship than the one at issue here, and therefore provides little support for the State's position. It does appear from the Commissioner's Prefatory Note to the Uniform Fiduciaries Act that the Act was meant to apply only to "situations which arise where one person deals with another person whom he knows to be a fiduciary," and does not address the liabilities of the fiduciary himself.[69] Nevertheless, the definition set forth in that Act is instructive. Moreover, Louisiana courts largely incorporate it as part of the definition of "fiduciary" typically adopted even outside of the context of the Act. For example, in <u>State v. Hagerty</u>, the Louisiana Supreme Court observed:

> The word "fiduciary," as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking. Also more specifically, in a statute, a

---

[68] <u>Delta Dev.</u>, 502 So. 2d at 1041 (quoting <u>Toombs v. Daniels</u>, 361 N.W.2d 801, 809 (Minn.1985) (citations omitted)) (emphasis added).

[69] <u>See</u> La. Rev. Stat, Title 9, Code Title XV, Chapter 1.

guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person, trust, or estate.[70]

Even if we were to agree with the State's position that the list of fiduciaries enumerated in Louisiana's Uniform Fiduciaries Law is not exclusive, we still would not hold that a riverboat gaming license holder meets the only slightly broader definition adopted by the Louisiana Supreme Court. As discussed earlier, such a gaming license does not transfer any property interest from the State to the licensee; neither does a riverboat gaming licensee "act primarily" for the State's benefit. Any benefits the State derives from riverboat gaming are welcome by-products, but not the "primary" purpose, of the licensor-licensee relationship. We therefore affirm the district court's summary judgment dismissal of the State's breach of fiduciary duty claim against Guidry.

## III. CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment for Guidry to reject the State's claims for (1) tortious acquisition of a riverboat gaming license, (2) conspiracy in the breach of a fiduciary duty, and (3) breach of a fiduciary duty is, in all respects,

AFFIRMED.

---

[70] 205 So.2d 369, 374 (La. 1968).